J. & P. COATS, Limited, v. JOHN COATES THREAD CO.

(Circuit Court, D. Minnesota, Third Division. January 28, 1905.)

1. UNFAIR COMPETITION—ADOPTION OF CORPORATE NAME.

While a person has the right to use his own name to designate articles which he manufactures and deals in, a corporation has not the right to use the name of one of its incorporators, where it is the name by which an article made and sold by an older dealer is usually called for and described, so as to cause deception of purchasers and injury to the older manufacturer.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 75, 84.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. SAME—FRAUDULENT INTENT.

Complainant, J. & P. Coats, Limited, a corporation, and its predecessors in business, have made and sold thread in the United States since about 1840, which has usually been called for and sold under the same of "Coats thread," and has by such name acquired a good reputation and a large sale; it being understood generally that thread so called was manufactured by complainant. Defendant corporation, the John Coates Thread Company, later commenced the manufacture and sale of thread; having taken its name from that of one of its incorporators, who had never been in the thread business previous to defendant's organization. It was shown that in many instances purchasers calling for Coats thread were given by dealers thread made by defendant, which it sold at a lower price than complainant charged for its product, but which retailed for the same price. There was little or nothing on the spools to attract the attention of the ordinary purchaser to the difference. *Held*, that defendant's name was apparently adopted for the purpose of unfair competition, and that its use would be enjoined.

In Equity. Suit to enjoin unfair competition.

C. A. Severance and Archibald Cox (Guthrie, Cravath & Henderson, Carl A. De Gersdorff, and Joseph P. Cotton, Jr., on the brief), for complainant.

John E. Stryker (L. J. Dobner, on the brief), for defendant.

LOCHREN, District Judge (orally). This suit was brought by the complainant corporation, which is a manufacturer and dealer in thread, to restrain the defendant corporation, which is also a dealer in thread, from the use of the corporate name which the defendant has adopted; claiming that such use results in what is known as "unfair competition,"

and is liable to deceive the public and purchasers of thread into the belief that the thread which is put upon the market by the defendant is the thread that is manufactured and sold by the complainant, and that it thereby injures the trade of the complainant, not only by causing sales of its thread to be made to purchasers who actually desire and intend to purchase the thread made by the complainant, but also by furnishing an inferior article, supposed by the purchasers to be the thread of the complainant; that the quality of the complainant's thread is thereby discredited and its business injured.  The evidence shows that the predecessors of the complainant have been engaged in this business since about 1830, and in the sale of thread in the United States since about 1840—a period of some 60 years—and that the manufacture was commenced by James and Peter Coats originally at Paisley, in Scotland, and that after they had begun dealing in thread in this country they established a manufactory of thread in the United States at Pawtucket, R. I.

It is claimed upon the part of the defendant that the complainant is not entitled to the relief asked, for the reason that it has, in putting its thread upon the market, made misrepresentations which would debar it from equitable relief of the kind asked; that it has caused general belief that this is a foreign thread, whereas, being manufactured in Rhode Island, it is a domestic thread; and that it has not set forth on its label the claim that it is the assignee and entitled to the trade-marks of the original partnership, or of the first corporation which was formed to carry on the business, following that partnership.

It does not appear from the evidence that there is anything in the dressing of the goods or the labels upon them, or that there ever has been, which has represented the goods to be made in a foreign country. The labels, both on the spools and on the packages, are silent in respect to where the thread was made.  It does not represent on those packages that it is the successor of J. & P. Coats or the first corporation, the J. & P. Coats Company.  There does not seem to be any misrepresentation, and it does not strike me that the matter is material at all, unless there is some misrepresentation which might mislead the public or purchasers.  The fact that these statements are not on the label would not affect purchasers, in my judgment, and is entirely immaterial. In some of the cases cited there were misrepresentations—for instance, as to the place of manufacture—but there is no such misrepresentation on these packages.  I think there is nothing in that contention.

It is claimed also upon the part of the defendant that its corporation had a right to adopt the name "Coates," being the name of one of the incorporators, and to transact business under the name of the John Coates Thread Company, and that, if the complainant is injured thereby, it is damnum absque injuria, because the defendant did no more than it had a right to do.  It seems to be well settled that every person has a right to use his own name in the conduct of his business—any business that he is engaged in personally—and upon the labels that he places upon his goods.  But even in respect to that, it is pretty well settled that it must be done in a way that will not injure a person who has the same name, and has under that name acquired a reputation for an article manufactured that is valuable; that is, while a person has a right

to use his own name, he must do it in a way which will not injure another. Therefore, in cases of that kind, it is quite often required by the courts that he shall differentiate his labels, or the method that he takes to represent his articles, from those of the older manufacturer, so that it shall not result in placing his goods so they will be likely to be sold to purchasers who believe that they are the product of the earlier manufacturer. There is nothing about these labels of defendant, I think, that anybody could complain of as simulating the labels of the complainant. The packages are entirely different in their appearance, and, if these articles were ordinarily sold in packages, the purchaser, being in the habit of purchasing one kind, would be very unlikely to be misled by receiving a package of the other kind. But in respect to these goods, the ultimate purchaser does not purchase the packages, ordinarily, but single spools of thread, and in reference to those there is little to attract the attention of any ordinary purchaser —especially one who had no knowledge of but one kind of goods as being sold under the same name. It appears from the evidence that these goods of complainant are ordinarily called for by the name of "Coats thread." The purchaser, going into a retail store and desiring to purchase a spool or a few spools of such thread, simply calls for "Coats thread"; and I think the evidence shows that at the time the defendant went into business it was the general (perhaps the universal) understanding of those who had occasion to make such purchases that by calling for "Coats thread" they would be supplied with thread manufactured by the complainant, there being no other so known on the market. It being on the market so long, it had an established reputation, and was favorably regarded; and the article was ordinarily called for by that name, and no other. While the name is precisely as appropriate to the thread which is furnished by the defendant as to the article that is put on the market by the complainant, the evidence shows that in many instances persons calling for "Coats thread," desiring and expecting to receive the thread manufactured by the complainant, have been furnished by retailers with the other article. So that the liability to mistake is plainly shown. The fact that mistakes have occurred very often, and that they are liable to occur constantly, is shown not only by the evidence, but appears as a necessary result from the fact of the two kinds of thread passing generally under the same name of "Coat[e]s thread." It appears from the evidence that the defendant furnished the retailers this thread at a lower price than is required by the complainant—considerably lower—and that the retailer would have an interest, as the articles retailed for the same price, in putting off the defendant's article instead of the complainant's; that the means of deceiving purchasers in that respect exists necessarily in the way these articles are put up; and it must be held that such result was contemplated by the defendant.

Now, while any person has the right to use his own name in the conduct of his business, in describing the articles of his manufacture and which he is dealing in, he has not the right to use the name of any other dealer; and it is well settled by the authorities that a corporation has not the right to use the name of one of its incorporators for the purpose of unfair competition with an older dealer, where it is likely

to do him injury, and that it will not be permitted to use that name if it is the name by which the older article is usually called for and described. As the use by the defendant of the name "Coates," having the same sound as the name by which the complainant's thread has been so long and favorably known, will certainly injure the business of the complainant, such use would be restrained, even though such consequence was not foreseen nor intended by defendant. But there is in this case evidence that goes farther than that, and shows that this was done intentionally for the very purpose of making use of the reputation which had been acquired by the complainant in the selling of the thread of the defendant. If we credit the testimony of Mr. Boynton at all, the name of the defendant was chosen deliberately for that purpose. His testimony has been criticised by the counsel for the defendant, and it certainly shows that he himself purposed to adopt this fraudulent practice in his own interest. There may be considerable ground for censuring him, and perhaps discrediting him to some extent, but I do not know that there is sufficient to warrant me in throwing out his testimony altogether, so long as it seems to correspond with the admitted facts in the case—the facts that the corporation was actually formed at that time, that Mr. Coates had never been engaged in the business at all up to that time, and that his name was taken, instead of any other name or the name of any other incorporators, to describe this corporation. I am inclined to think that the allegations in the bill are sustained and that the complainant is entitled to an injunction as prayed, and to an accounting.

The decree may be prepared accordingly.