## R. B. DAVIS CO. v. DAVIS.
### No. 7350.

District Court, E. D. New York.
April 23, 1935.

See, also, 8 F. Supp. 905.

Nims & Verdi, of New York City (Wallace H. Martin and Stewart W. Richards, both of New York City, of counsel), for plaintiff.

Russell, Shevlin & Russell, of New York City (Matthew J. Shevlin and Charles M. Siegfried, both of New York City, of counsel), for defendant.

INCH, District Judge.

The plaintiff brings this suit by bill of complaint duly filed August 18, 1934, in which it asks that the defendant be restrained from manufacturing or selling, or offering for sale, a certain baking powder and a chocolate flavored malt product, made by defendant, in certain containers, bearing certain labels, offered in evidence, which plaintiff claims has enabled defend-

ant to unfairly compete with plaintiff, and which violate plaintiff's trade-marks, etc.

The defendant duly answered, by pleading filed October 15, 1934, which answer puts in issue the material allegations of said complaint. The answer contains a counterclaim based on an alleged conspiracy and entrapment by plaintiff resulting in alleged damage to defendant; it being claimed that the said conspiracy and entrapment was a part of plaintiff's efforts to unlawfully destroy the business of defendant.

The plaintiff duly replied to this counterclaim by reply, filed October 30, 1934.

This court has jurisdiction of both suit and counterclaim.

A preliminary injunction was granted to plaintiff, which injunction was thereafter modified on appeal. This will be considered later in this opinion.

The first thing to be found are the facts. Thereafter will be considered the effect of the order of said appellate court, as indicated in its decision. Finally, the law applicable to the facts found will be discussed.

A great deal of testimony was taken, but the material facts appear to be, in substance, as follows:

In 1878 Robert Benson Davis commenced the manufacture of baking powder. In his label he emphasized two things. One was the word "Davis" the other the letters "O. K." The earlier specimens of this label are found in Plaintiff's Exhibits 2, 3, and 4. The business started in New York City, but in or about 1893 the factory was moved to Hoboken, N. J., where it still is.

In 1905 the plaintiff was incorporated under the laws of the state of New Jersey, and four years later plaintiff obtained its first trade-mark registration of Davis Baking Powder (Plaintiff's Exhibit 1).

In 1919 plaintiff obtained its trade-mark for the word "Davis" with an apostrophe (Plaintiff's Exhibit 5). Finally in 1932 plaintiff obtained another trade-mark registration for "Davis Baking Powder" (Plaintiff's Exhibit 4).

It is therefore a fact that, for over a half a century Davis Baking Powder has been on the market, and for the past quarter of a century, since obtaining its first United States trade-mark, this baking powder has been identified by the word "Davis."

Between the years 1918 and 1934 the annual sales have averaged 21,000,000 cans. This market covers not only the United States but foreign countries. At one time these sales reached almost 35,000,000 cans in a single year.

Substantially all the grocery stores, and certainly all the important stores of this character, not only handled Davis Baking Powder, but there is ample testimony that this product is commonly known and identified by the name "Davis."

To be sure, the letters "O K," at first more prominent, and under the new and more attractive labels less prominent, have been retained, but it is clearly proven from the testimony that it is this word "Davis" that uniformly identifies plaintiff's product to the consumer and grocer.

Naturally such a history in regard to a product, one which I think cannot be reasonably disputed, rests on two things: One the excellent method of manufacture; the other, wide advertising.

One of these alone might not be sufficient, for it is a waste of money to advertise an inferior product. Certainly this would be so for such length of time as we find here. On the other hand, unless an excellent product is widely and wisely advertised, the extent of its market remains limited.

The proof shows that plaintiff's method of manufacture comprises ingredients of highest quality, carefully tested by experts, and manufactured by expensive and adequate machinery, designed to insure its purity, and, from the time it consists of raw material until it reaches the consumer packed in its can, this product is not touched by human hands.

It also appears that for the past few years air-tight cans have been added to prevent deterioration; it having been discovered, in the continued efforts of plaintiff to perfect its product, that the slip cover can, then in general use, tended to permit such deterioration.

There is testimony that plaintiff supplies more than one-half of the total amount of the baking powder sold in the New York area.

In addition to this business of manufacturing and selling baking powder, plaintiff also manufactures a preparation named "coco-malt." This coco-malt business was purchased by plaintiff in 1925, and in the past ten years plaintiff has sold approxi-

mately 34,000,000 cans of this chocolate malted drink.

As to the second important thing, that of advertising of its baking powder and coco-malt, plaintiff has done a great deal. This consists of extensive advertising in newspapers, magazines, street car cards, and over the radio. The volumes of these advertisements offered in evidence by plaintiff covering a period from 1917 to date (Plaintiff's Exhibits 10, 11, 12, and 13) show the wide amount of this advertising.

Much of the later advertising relates to both the baking powder and "coco-malt."

This advertising also has been in newspapers of other languages except English.

All of the above has cost, and is costing, plaintiff a great deal of money.

Having briefly considered the plaintiff's business, we now turn to the business conducted by the defendant.

According to the testimony of Davis, he was born in 1892. Both his father and mother were Rumanians and came to this country before his birth. So far as he knows, his father, who is dead, was known as Davis, and defendant has always been known by that name. His mother was not produced as a witness. In 1911, when he was about nineteen years of age, he was employed by a shoe company. In 1918 he entered the Army and was discharged March, 1919, and then returned to this shoe company, where he continued to act as an accountant and manager, until 1921, when he left the shoe company to go into the real estate business. He was and is also a notary public. He had a small place of business at 176 Stagg street, Brooklyn. In 1932 he looked around for some other and additional occupation, and became interested in a magazine article which advertised a book by some one mentioning the various lines of business which might be gone into, and pursuant to this he considered the possibility of manufacturing and selling a baking powder.

He made inquiries at a small grocery store near by, and learned from the grocer that he bought his baking powder from a certain concern, and called upon this concern and arranged with it to pack a product for him in his own cans and under his label. He then had a commercial artist make cuts for a label, and the product was then packed by this company in defendant's cans shipped to and sold by defendant.

In April, 1933, he registered his label in the Patent Office, No. 308,688 (Defendant's Exhibit D).

The foregoing arrangement by defendant continued for a few months, when defendant changed to another concern in Jersey City.

This new concern followed the same plan, packing the cans for defendant and shipping same to him for sale by him, until February, 1934, when defendant obtained a formula from a chemical company and started to manufacture a powder himself and pack the cans by hand.

At his place of business, on the window of which is the advertisement of the real estate and insurance activities of defendant, the front portion is used as an office or store, and set aside is a small room, with a curtain at the doorway, in which room or compartment is his so-called manufacturing plant. He states that he still does "insurance and real estate and acts as notary public."

This plant consists of a 200-pound mixer, driven by a motor, and, after mixing the powder, it is discharged into a galvanized can, and from this can it is poured into a barrel, lined with moisture proof paper, and a cover is placed upon this barrel. Defendant then packs the cans by hand as needed.

Thus it is apparent that both the size of this so-called plant and the method pursued are somewhat primitive. His method of selling the product depends on his own efforts as salesman, with such assistants as he hires. His advertising likewise is limited, but his price is cheaper.

No fault can be found with such humble beginnings as it has often accompanied the start of a large and important industry. The trouble here is that defendant is attempting to succeed, not on the merits of his own baking powder, etc., but is intentionally appropriating the extensive good will and advertising of plaintiff in his attempt to sell his products.

So much for the facts concerning the history of the plaintiff and defendant.

We now turn to the decision of the Circuit Court of Appeals of this circuit, 75 F.(2d) 499, 500, on the motion for a preliminary injunction.

This motion was based on affidavits, the statements in which were followed substantially by many of the witnesses called at the trial.

Of course, if this decision was intended to direct, in a sense, the proper form of decision after the trial, such direction must and should be carefully followed by this court. But it does not seem to me that such was the intention and, in fact, a mere reading of the decision indicates, it seems to me, that pending a trial the appellate court, considering a motion confined merely to affidavits, did not feel that the broad relief originally directed by the lower court should be granted but that any such broad relief, if any, should be only after a trial at which witnesses could be examined and cross-examined.

Believing this is the correct viewpoint, the court has carefully considered all the testimony and exhibits, necessarily giving the great weight to which it is entitled to the decision on the preliminary motion, and with the due caution indicated under the circumstances.

The mandate of the Circuit Court of Appeals modified the order of the lower court and confined the relief granted to plaintiff pending the trial to the following: "From using in connection with the sale of baking powder other than the plaintiff's product, the word, 'Davis,' unless accompanied by the prefix 'Julius J.,' and the suffix, 'not connected with the R. B. Davis Company, manufacturers of the original Davis baking powder.' Both prefix and suffix are to be in type of the same font, size and color as the word 'Davis.'"

Counsel for defendant now urges, both in his briefs and on the oral argument, that even this restriction is not warranted.

In my opinion, it is not only warranted, but in the view that I take of the facts proved at the trial, it will be ineffective to afford reasonable protection to plaintiff from the deliberately unfair competition of defendant.

The learned appellate court in its opinion stated, among other things, as follows: "In general we are in agreement with the disposition of this case made by the District Judge. Laying aside all controverted issues, it is apparent that the defendant, long before his business could have become substantial, learned that the use of his name in the baking powder business would be likely to interfere with the plaintiff's old and well-known name. Thereafter he went on at his peril, even though his original purpose was innocent; a conclusion which we are by no means disposed to assume, and whose determination we leave open for the hearing."

I am satisfied, after careful consideration of all the testimony, that on the particular facts in this suit the great concern of the defendant about the right to use his name is a sham. That what he wants is the right to use the plaintiff's name, and hopes to accomplish this because of the known reluctance of the courts to restrict a man in the use of his own name in business.

The defendant on cross-examination admitted that, when he was about fifteen or sixteen years of age, his mother used Davis Baking Powder, the product of plaintiff, while he also states that he did not know of any Davis Baking Powder being on the market when he decided to go into business.

It is my opinion that he not only knew of it since the time that he admits that his mother used it, but that he intentionally and deliberately chose this name "Davis" to be prominently displayed on his product because he knew that plaintiff's powder was very widely and favorably known; in other words, he found it a fortunate circumstance, and believed he could use this desirable name because of his own name. This may have been a reasonable attitude were the facts different, but this alleged right entirely disappeared after he received notice from plaintiff complaining of his acts, and nevertheless persisted in doing so.

In my opinion, even the original idea was not innocent, but, on the contrary, was shrewdly adopted, hoping that the law would sustain him on the theory of the use of his own name.

Thus, in my opinion, the original use of this name by defendant was a business fraud, unless a man can use his own name under any and all circumstances, which, I take it, is not the law. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Garrett v. T. H. Garrett & Co. (C. C. A.) 78 F. 472; Nims on Unfair Competition (3d Ed.) pp. 195–206. Also see as to registration in this connection Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Chickering v. Chickering & Sons (C. C. A.) 215 F. 490.

I also find that, because of the long association of the word "Davis" with plaintiff's products, especially that of baking

powder, the word "Davis" has taken on a new meaning or, as it is usually referred to, has assumed a secondary meaning, which latter meaning has submerged the primary meaning of the word "Davis" as a man's name merely, and this new meaning survives and has become the identification, in the market, of the product and its source, as much as a trade signature.

Counsel for defendant in their excellent briefs strenuously oppose both of these propositions. They deny any secondary meaning to the word "Davis" in this suit, and they assert the absolute right of defendant to use his own name as he pleases.

It seems to me that they rely substantially upon several cases in regard to the right of a man to use his own name. But even in these cases it seems to me the court gave no such absolute right. In Howe Scale Co. v. Wyckoff, etc., 198 U. S. 118–136, 25 S. Ct. 609, 612, 49 L. Ed. 972, the court states: "It is dishonesty in the use that is condemned, whether in a partnership or corporate name, and not the use itself." And also in this case it is indicated that the power of the court is properly directed towards the correcting of an abuse of the right to use a personal name rather than the denial of the right to use.

Again in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169–187, 16 S. Ct. 1002, 1009, 41 L. Ed. 118, the court states: "The right to use the name because of its generic signification would imply a power to destroy any good will which belonged to the original maker. It would import not only this, but also the unrestrained right to deceive and defraud the public by so using the name as to delude them into believing that the machine made by one person was made by another."

In Chickering v. Chickering & Sons (C. C. A.) 120 F. 69 and Royal Baking Powder Co. v. Royal (C. C. A.) 122 F. 337, and Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 S. Ct. 625, 35 L. Ed. 247, this right to prevent injury from the use of a name is recognized.

So that in the above cases upon which defendant's counsel relies there seems to be nothing which interferes with the power of this court not to "deny" the use but to "limit" the use of a man's name, which is all that we are doing here.

I shall assume that defendant's name is Davis and that under ordinary circumstances he would have the right to use his name in making baking powder or a chocolate malted product, but the overwhelming weight of testimony here is that the name of Davis has become so associated with a baking powder manufactured and sold by plaintiff that the use of this name by defendant, on a can of baking powder, without something to reasonably assure the court that the ordinary public, which includes grocermen as well as consumers, would not be misled or deceived as to the source of the product, would be to allow the defendant to use this name and thus commit a fraud upon the plaintiff.

As to the chocolate malted product of plaintiff and the proposed product of defendant, a somewhat different situation exists, but not as to his right, in fair competition, to use the name of Davis. The proof as to the conception by defendant of this proposed additional product, when considered in the light of the preceding ten years of manufacture and sale by plaintiff of its "coco-malt," together with its advertising of this product as a Davis product, satisfies me that this is but another attempt to unfairly compete with plaintiff by using the name "Davis," indicating to the buyer of this product the false and misleading source of manufacture.

■ It is only necessary to cite a few cases to show the well-established doctrine that one manufacturer cannot palm off his goods as that of another. The proof of plaintiff clearly shows this likely confusion and deception. See Jacobs v. Beecham, 221 U. S. 263, 31 S. Ct. 555, 55 L. Ed. 729. Other cases, L. E. Waterman Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142; Vick Medicine Co. v. Vick Chemical Co. (C. C. A.) 11 F.(2d) 33; De Nobili Cigar Co. v. Nobile Cigar Co. (C. C. A.) 56 F.(2d) 324; Hat Corporation, etc., v. D. L. Davis Corporation (D. C.) 4 F. Supp. 613; A. Hollander & Son, Inc., v. Joseph Hollander, Inc., 117 N. J. Eq. 306, 175 A. 628; Westphal v. Westphal's World's Best Corporation, 216 App. Div. 53, 215 N. Y. S. 4, affirmed 243 N. Y. 639, 154 N. E. 638; Compania, etc., v. American Bacardi, etc., N. Y. Law Journal, June 20, 1934.

Passing off products. Florence Mfg. Co. v. Dowd (C. C. A.) 178 F. 73; Martini, etc., v. Consumers'-People's Products Co. (D. C.) 57 F.(2d) 599; Stuart v. F. G. Stewart Co. (C. C. A.) 91 F. 243; Meyer v. Dr. B. L. Bull Vegetable Medicine Co. (C. C. A.) 58 F. 884.

274

Ordinary purchasers buying with ordinary custom are likely to be misled. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

It is not necessary to prove actual deception of customers if the natural and probable result would be confusion and deception. Rice, etc., v. Vera Shoe Co. (C. C. A.) 290 F. 124.

If, after notice, defendant stood upon his rights and continued to use a label that might be held likely to deceive, such act might be an intentional wrong. Straus, etc., v. Notaseme Hosiery Co., 240 U. S. 179, 36 S. Ct. 288, 60 L. Ed. 590; Fuller v. Huff (C. C. A.) 104 F. 141, 51 L. R. A. 332; R. H. Macy & Co. v. Macys, Inc. (D. C.) 39 F.(2d) 186.

Direct evidence of fraudulent intent is not required where the necessary and probable tendency is to deceive the public. Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706.

Counsel for defendant claims that much of this proof by plaintiff was manufactured by plaintiff's investigators and that no one of average intelligence would be deceived by defendant's label.

I do not agree with this contention. The proof shows otherwise.

So far as the use by defendant of the word "Davis" on his products is concerned, the result can only be, upon the particular facts of this case, a deception and fraud. Nor, in my opinion, can this be avoided by the otherwise reasonable use by defendant of his initials or first name, whether large or small, for it is the word "Davis" that is the valuable thing in this controversy, and defendant knows it.

This can be easily shown by assuming that the defendant did not display the name "Davis." In such case the products of defendant would stand upon their own merits. He would be free to increase his business by the quality and the desirability of his merchandise in the same way that plaintiff, through over a half a century, has succeeded in the market.

Defendant has shown no training in this business, nor does he present any new or peculiar product. He went into it solely as something to be tried when his business of real estate and insurance languished and without any experience whatever. Yet it is evident that around the word "Davis" and defendant's right to use

it, centers the most strenuous efforts on the part of defendant.

Defendant's counsel says that it is a very common name, and so it may be. But I have failed to find any good reason by defendant for its use except the claimed right to use his own name, regardless of consequences, which I believe I have shown is not the law.

Consequently I decide that defendant must not use the name "Davis" to identify his products, confining my decision to the particular facts here and also confining it to this defendant.

I do not think, however, the necessary protection of plaintiff, thus afforded, will be weakened or rendered ineffective if defendant is allowed to use his full name or that of his company as now indicated as the source of manufacture, in small and inconspicuous letters on his labels, provided this is also done in a proper manner and in a way that will not reasonably conflict with the real label of the article. I am quite aware that this right may be abused by defendant, but, if such abuse arises, it can be corrected without much difficulty, and it seems to me that, in spite of the unusual circumstances here, such limited right should be accorded defendant in view of the desire of the courts not to interfere, beyond what is absolutely necessary to prevent a fraud, with the right of a man to use his own name.

This leaves the present label of defendant to be briefly discussed.

In my opinion, eliminating the word "Davis," I see no reason to hold that defendant's label with its word "Rising" and general color scheme would reasonably mislead or deceive the public. Defendant can use this label as so changed in accordance with this decision.

I am not satisfied with the proof as to defendant's proposed label as to his proposed chocolate malt product.

While there is no doubt that he intended to anticipate the color of plaintiff's product and the fact that it was another successful product of plaintiff, the proof is insufficient to justify an injunction against some proposed label.

However, I am satisfied that it would be a plain fraud and surely unfair competition which could and should be restrained for defendant to use a label for this product which displays the word "Davis." His right to use the name shall be

limited to the same extent as is decreed in the case of baking powder.

There has been no laches on the part of plaintiff. Shortly after plaintiff became aware of defendant's product being in competition with it, and on August 23, 1933, plaintiff wrote defendant requesting discontinuance by him of the use of the name "Davis." Defendant declined to obey this request, and this suit was commenced August 27, 1934. In the meantime plaintiff was investigating the acts and conduct of defendant for the purpose of proof at the proposed trial. I see no reason to discuss the trade-marks.

This disposes of the suit by plaintiff.

There remains the counterclaim of defendant.

All that need be said as to this is that defendant bases this counterclaim upon what he claims to have been a conspiracy on the part of the plaintiff to injure defendant, and refers to the testimony of Ralle, a professional investigator, hired by plaintiff. It is my opinion that these claims are baseless. To be sure, there is testimony that Ralle and defendant and others considered the advisability of the extension of defendant's business and the form of labels, etc., to be used, but the most that can be said against it would be that Ralle always found a ready listener in defendant, and, if anything, simply furnished opportunity to defendant to do what he intended to do. This is far from any entrapment or conspiracy. I find the counterclaim without merit, and it is dismissed.

Submit findings of facts and conclusions of law. Decree for plaintiff, with costs, in accordance with the above.

Settle decree on notice.