**J. A. DOUGHERTY'S SONS, Inc., Distillers, v. DOUGHERTY.**

No. 800.

District Court, E. D. Pennsylvania.

Dec. 30, 1940.

Beekman Aitken, of New York City, and Marshall A. Coyne and David J. Smyth, both of Philadelphia, Pa., for plaintiff.

Francis J. Walsh, of Philadelphia, Pa., for defendant.

BARD, District Judge.

The plaintiff corporation has instituted this action to obtain injunctive protection and other relief against the allegedly unlawful use of the word "Dougherty's" by the defendant in the sale of whiskey. The defendant denies violation of any rights of the plaintiff and requests affirmative relief in the form of a decree restraining the plaintiff from interfering with his business, a decision defining all the rights of the parties, an award of damages, and an accounting of profits.

I make the following special

Findings of Fact

1. The plaintiff is a corporation organized and existing under the laws of the State of Maryland, having been incorporated in 1925.

2. The defendant is an individual, a citizen of the United States and a resident of Philadelphia, Pennsylvania.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of three thousand dollars ($3,000).

4. The word "Dougherty's" was used in the manufacture and sale of whiskey for many years by James A. Dougherty, then by a later formed family firm, and also by another firm prior to the incorporation of the plaintiff, present owner of the business.

5. The manufacture of whiskey was discontinued in 1918 when the distillery was dismantled by the firm then operating the business.

6. The plaintiff corporation, operating at the same site occupied by James A. Dougherty and later firms, has used the name "Dougherty's" in the sale of straight whiskeys since 1925, the year of its incorporation.

7. The name "Dougherty's" dominates the front labels on some of the plaintiff's whiskeys, and appears on all.

8. The plaintiff sold 3,250 cases of straight whiskey to the Pennsylvania Liquor Control Board in 1933, which liquor was resold by the board during subsequent years until the supply was exhausted in 1937.

9. The plaintiff has made no sales of straight whiskey to the Pennsylvania Liquor Control Board since 1935 for resale to the public.

10. The plaintiff has made sales throughout the United States in general since repeal of prohibition.

11. The plaintiff did not sell any blended whiskey prior to 1940.

12. The defendant began to sell blended whiskey under the name "Dougherty's" in August, 1939, with knowledge that there was another business using the word "Dougherty's" in the sale of whiskey in Pennsylvania.

13. The name "Dougherty's" dominates the front labels of defendant's blended-whiskey bottles.

14. The labels used by the defendant contain a plain printed statement, in smaller type, that the whiskey is that of Edwin L. Dougherty.

15. The public buys whiskey in such a way that the brand name is often used to designate the kind wanted.

16. There is a noticeable difference between the labels of the plaintiff and those of the defendant, except for the blended whiskey labels, the plaintiff's blended whiskey label closely resembling one set of the defendant's.

17. Although the plaintiff made plans to blend whiskey prior to the appearance of defendant's blended brand, it did not sell blended whiskey in Pennsylvania until February 8, 1940, after the defendant had been stopped on November 15, 1939, from doing so in Pennsylvania by the Pennsylvania Liquor Control Board.

18. The defendant registered his label with the Secretary of the Commonwealth of Pennsylvania on April 17, 1939, under the Act of June 20, 1901, P.L. 582, 73 P.S. § 1. The defendant also registered in New York and New Jersey, on April 19, 1939.

19. The plaintiff registered its name "Dougherty's" in some twenty states, including Pennsylvania, registering in Pennsylvania after the defendant.

20. The plaintiff is owner of a certificate of registration of a trade-mark issued by the United States.

21. The United States and Pennsylvania registrations of the plaintiff are not of the word "Dougherty's" alone, but are of the word "Dougherty's" used in conjunction with a drawing of a sheaf of rye.

22. The defendant used a number of signs which tended to confuse his business with that of the plaintiff.

23. The plaintiff learned of the defendant's use of the name "Dougherty's" in late August, 1939, and objected to the defendant shortly thereafter.

24. The label adopted by the plaintiff for its blended whiskey is similar in general appearance to that theretofore used by the defendant.

25. There are noticeable distinctions in the parties' blended whiskey labels, but not sufficient to forestall confusion, since the dominating word on both is "Dougherty's".

26. The defendant sold some 1,100 cases of his blended whiskey through the Pennsylvania Liquor Control Board during the few months of his operation beginning August 1, 1939.

27. The plaintiff has sold 140 cases of blended liquor through the Pennsylvania Liquor Control Board on special order since it was put on sale in February, 1940.

28. Sales to the Pennsylvania Liquor Control Board "on special order" are sales procured by solicitation, and are effected by sending the order to the Board for its approval and authorization.

29. There is evidence of confusion of the whiskeys of the parties.

30. The Pennsylvania Liquor Control Board has refused to accept orders for either the plaintiff's or defendant's brands under the name "Dougherty's" until the right to the use thereof is determined.

### Discussion

The fundamental concern of the plaintiff is to have the defendant enjoined from using the word "Dougherty's" in a prominent position on the latter's bottle labels. The plaintiff, for support of its claim that it has the exclusive right to use the word "Dougherty's", relies upon the existence of a secondary meaning of the word, as used to identify the plaintiff's whiskeys.

It is true that surnames, though not capable of serving as trade-marks or trade-names, can acquire much of the legal force of trade-names if they are used to designate particular products exclusively for a sufficient period of time for the public to attach a secondary significance or meaning to them. R. B. Davis Co. v. Davis, D.C., 11 F.Supp. 269, and cases cited therein.

The court said, in that case, that long association of a name with a product results in that name taking on a new or secondary meaning, which meaning submerges the primary meaning of the word as a man's name merely, and the new meaning survives as the identification, in the market, of a product and its source.

However, unlike the case of valid trade-marks or trade-names, the business which labels its wares with a personal name must take the hazard represented by the rights of others to use their names reasonably in their business. When confronted by a business operating under the name of its owner, a business identified by a personal name does not have as effective safeguards as those appurtenant to trade-marks and trade-names.

It must be noted, though, that while it is true that every man has a right to use his own name in his business, it is also true that he has no right to use it for the purpose of stealing the goodwill of another's business. The right to use a name because of its generic signification does not imply a right to use it to destroy goodwill belonging to another. L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142; Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; De Nobili Cigar Co., v. Nobile Cigar Co., 1 Cir., 56 F.2d 324; R. B. Davis Co. v. Davis, supra. In cases concerned with one's use of his own surname the power of the court is properly directed towards the correcting of an abuse of the right to use a personal name rather than the denial of that right. Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U.S. 118, 136, 25 S.Ct. 609, 49 L.Ed. 972. So, adjudications precluding use of personal names are not properly to be deemed deprivations of rights.

In this case, the word "Dougherty's" or the firm name "J. A. Dougherty and Sons" undoubtedly acquired a secondary meaning, prior to prohibition, as a name appearing on whiskey made and sold by the Dougherty family. In 1918 the distillery was dismantled. Thereafter, any goodwill attached to the names naturally was appurtenant to the continuing business of selling whiskey, though the name could not indicate a manufacturer. Upon the institution of Prohibition, the goodwill accorded the company then using the name "Dougherty's" naturally diminished in the course of succeeding years, though the

plaintiff did continue to sell its whiskey as permitted in that period. After repeal, the market for whiskey expanded and a fair-sized quantity of the plaintiff's whiskey—with the name "Dougherty's" on the bottles —was sold. Thus, it is demonstrated that there has been a continuing though varying amount of goodwill and commercial significance attached to the word "Dougherty's". The plaintiff's whiskey could still be purchased in the state stores in Pennsylvania as late as 1937 and could be purchased on special order until March, 1940. It continues ready to do business in Pennsylvania, and it presently does business throughout the United States in general.

■ It was my factual conclusion that there were, in the course of the years, several changes in the identity of the owners of the business, and several changes in its organization. A corporation has owned and operated it since 1925, though the identity of the stockholders has changed. The defendant relies in large part upon this lack of continuity in ownership as a bar to any protection for the plaintiff, averring that the plaintiff lacks "title" to the name and that its secondary meaning does not refer to the plaintiff, since it can claim no relation to the individuals and organizations under whom the name originally acquired significance.

It seems to me that the defendant seeks to escape the obvious considerations confronting the court by entangling the whole matter in practically inapplicable refinements. It is sufficient if there now exists any secondary meaning or significance in the word "Dougherty's" as the name or identifying designation of the plaintiff's whiskeys. If the plaintiff enjoys any fairly-obtained goodwill under the name "Dougherty's", it does not lie with the defendant to say he can take that goodwill away simply because the plaintiff cannot establish a 91-year old "chain of title" to the name. I conclude that it would be an abuse of the defendant's right to use his name, were he to be allowed to use it to deprive the plaintiff of its goodwill, great or small in amount though it may be. Whatever fragments of secondary meaning are attached to the word "Dougherty's" should be assured the plaintiff. Therefore, the defendant may not continue to use his name in his business if his intent is or the effect will be to deceive the public.

■ The defendant knew there was another Dougherty in the whiskey business, but the propriety of an inference of intent to deceive the public is subjected to question by the facts that the defendant did not simulate any of the plaintiff's labels, did not use the name of any of the plaintiff's brands, did not use the mark of a sheaf of rye, and, most importantly, did not use the name on straight whiskey. Furthermore, the defendant printed plainly on his labels that the whiskey was blended and bottled for Edwin L. Dougherty. So, I am unwilling to infer—in fact—an intent to defraud the plaintiff and deceive the public. However, since such was the effect, the legal consequences can vary but slightly. Bad faith may have been necessary to warrant an absolute restraint of the defendant from using his own name, Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33, De Nobili Cigar Co. v. Nobile Cigar Co., 1 Cir., 56 F.2d 324, but good faith cannot license complete freedom of usage.

■ The next consideration is as to what will assure the plaintiff the goodwill attached to its use of the name "Dougherty's" without altogether depriving the defendant of the use of his name in his business. Since the public, whether it purchases at stores or in drinking places, may and frequently does designate its choice by brand name, it is apparent that the use of the word "Dougherty's" in a dominating position and type will promote confusion in the minds of prospective purchasers between the defendant's brand or brands and some brand or brands of the plaintiff. So long as the word "Dougherty's" is a dominating word on the defendant's bottles, the fact that it is qualified with some distinctive name such as "Special" or "Reserve" will not forestall confusion. Something further is needed to guarantee reasonably a ready differentiation by the public.

I conclude that the defendant should be enjoined to cease using the word "Dougherty's" or even "Edwin L. Dougherty's" as the dominating name on his labels or other means of identification, and to refrain from using the word "Dougherty" other than with the name "Edwin L." prefixed thereto in type of the same font, size and color, which font, size and color shall not be so chosen, arranged or placed as to dominate the label or other identification,

to prefix the above with the words "blended and bottled for", "bottled for" or otherwise as the case may be, and not to use the possessive or plural of the name "Dougherty".

In regard to the above I must state that regard for the public has largely motivated my decision as to the necessity for distinctive designations.

 The penalty claimed by the defendant to be due him under the Pennsylvania Act of June 20, 1901, P.L. 582, § 4, 73 P.S. § 6, is for infringement of a label registered thereunder. The plaintiff's blended whiskey label can, perhaps, be deemed a simulation of the defendant's. However, in view of the fact that the defendant was warned by an official of the Pennsylvania Liquor Control Board that another firm that had been in business many years sold whiskey under the name of "Dougherty's" and that he might run into difficulty, he is precluded from an award of this penalty in a court of equity.

### Conclusions of Law

1. The plaintiff is entitled to use the name "Dougherty's" on its goods.

2. The name "Dougherty's" has acquired a significance as a designation of the plaintiff's goods which warrants protection against interference.

3. The defendant has a right to use his name in his business.

4. The right of the defendant to use his name in his business is restricted to a use that will not result in confusion of his goods with those of a prior user of the same name, whose goods are identified with and by that name in the minds of purchasers.

5. The plaintiff is entitled to an injunction restraining the defendant from so using his name that reasonably attentive purchasers cannot readily distinguish between the products of the plaintiff and defendant, and from so using his name as to deprive the plaintiff in any other way of the benefits of the goodwill now appurtenant to the name "Dougherty's".

6. In light of the circumstances herein noted and others made apparent in the course of the trial, it is deemed proper that each party should bear its own costs.

7. A decree in accordance with the findings and conclusions herein may be submitted for entry as the order of this court.

The requests for findings of fact and conclusions of law are affirmed to the extent consistent herewith, and denied insofar as inconsistent herewith.