**KING PHARR CANNING OPERATIONS,
Inc. v. PHARR CANNING CO., Inc.**

Civ. No. 777.

United States District Court
W. D. Arkansas, Fort Smith Division.

June 13, 1949.

Beekman Aitken, New York City, Cecil R. Warner of Warner & Warner, Fort Smith, Ark., for plaintiff.

Byrne A. Bowman, Oklahoma City, Okl., Hardin, Barton & Shaw, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Discussion.

■ Defendant asserts that the trade-mark "King Pharr" being merely the name of a deceased person in simple block letters, not printed in a distinctive manner, is invalid, and that defendant has suffered damage by the purported registration. Validity of a trade-mark and proper registration, plaintiff's mark was registered under Act of 1920, 41 Stat. 533, are not synonymous, and in fact, the registration by plaintiff in 1945 was a mere formality so far as the merits of this case are concerned and did not purport, and plaintiff does not so contend, to establish the validity of "King Pharr" as a trade-mark.

■■ The Court is of the opinion that the registration under the Act of March 19, 1920, was valid. Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. However, since, in the final analysis, plaintiff is insisting upon an injunction, a remedy available at common law in a proper case, and not upon any relief given by and existing solely by virtue of the Act of March 19, 1920, it is immaterial on the question of validity as to whether the registration was proper, since validity is not determined or affected thereby.

■ In addition to diversity of citizenship and jurisdictional amount, the registration, proper or improper, and the claim thereunder is sufficient to give the Court jurisdiction of the claim of trade-mark infringement and unfair competition. Armstrong Paint and Varnish Works v. Nu-Enamel Corp. et al., supra; Title 28 U.S.C.A. § 1338.

■ "King Pharr", before the man by that name entered the canning business, was the name of an individual and as such was not available for appropriation as a valid trade-mark. At that time the only significance attached to it was that it was the name of the man. However, over a long period of years, because of its use in trade, the name has acquired a new meaning or a secondary significance, so that now

"King Pharr" identifies, to the public, a product in the market and its source. The purchasing public has long since forgotten, if it ever knew, the man. Therefore, the plaintiff, in using "King Pharr" as its mark, has acquired a valuable right, and it is entitled to appeal to this court for the protection of that right. See, for cases involving "secondary meaning": Armstrong Paint and Varnish Works v. Nu-Enamel Corp. et al., supra; J. A. Dougherty's Sons, Inc., v. Dougherty, D.C.E.D.Pa., 36 F.Supp. 149; Little Tavern Shops, Inc., v. Davis, 4 Cir., 116 F.2d 903; Grocers Baking Co. v. Sigler, 6 Cir., 132 F.2d 498.

The existence of a secondary meaning is a question of fact, and being such, each case must be determined according to its particular facts. In the instant case, "King Pharr" has been used on labels of cans containing vegetables since 1904. True, until 1918 it was used for identification of packer, but since that date up to and including the present, it has been used as a trade-mark. Time is the usual standard but not the exclusive one. Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424. The period of time during which "King Pharr" has been before the purchasing public, the extensive area of operations (now generally sold in 20 States), advertising in connection therewith, and the normal and natural acquaintance of the public with the mark due to continuous association therewith in the market, combine to establish the secondary meaning of the "King Pharr" mark.

The law of trade-marks is ordinarily inseparably connected with the law of unfair competition, with the former being but a part of the broader filed of the latter. Thus, even though a mark has not been registered or is incapable of becoming a valid trade-mark, because it may not be exclusively appropriated by any one person, still, in a proper case, one may be protected under the law of unfair competition from the acts of another in passing off the latter's goods or business for the goods or business of the former. The protection, of course, runs to the business man or merchant injured and to the public,

the protection of the public from such deceitful practices being of primary consideration. Too, there is the underlying principle of promoting honesty and fair dealing. See: Nims, Unfair Competition and Trade-Marks, Volume 1, Chapter 11, page 36, for a discussion of the basis of the action for unfair competition.

Since, in the instant case, the plaintiff's mark has acquired a secondary meaning, it now occupies that favored status under the law, whether trade-mark or unfair competition, which entitles it to the protection afforded by the law. Of course, the extent of that protection varies with the necessities of each case. As stated by the Court in Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., supra, 305 U.S. at page 336, 59 S.Ct. at page 202, 83 L.Ed. 195:

"When a name is endowed with this quality (secondary meaning), it becomes a mark, entitled to protection. The essence of the wrong from the violation of this right is the sale of the goods of one manufacturer for those of another."

Thus, whether or not, by acquiring a secondary meaning, a name, otherwise invalid as a trade-mark, becomes valid, the practical result is the same and the same protective relief is accorded under the law of unfair competition, and it is neither necessary nor desirable to split the two in this case.

It is not uncommon for there to be a conflict of principles or "rights" in cases of this sort, and the instant case presents such a conflict. The principal stockholder of defendant, Goodwin Pharr (as appears from the findings of fact he owns all but qualifying shares in the defendant corporation), insists that he is merely using his own name for the conduct of defendant's business and that he is entitled to so do. Assuming at this time that this well recognized right in an individual exists in the defendant corporation, because of its stock ownership, it remains that the right is coupled with a duty not to use the name so as to pass its goods off for those of another with the resulting injury to that

other and the deceit of the public, whether the passing off be intentional or the necessary result of selling goods under the name "Pharr". As stated in J. A. Dougherty's Sons, Inc., Distillers, v. Dougherty, supra [36 F.Supp. 151]:

"It must be noted, though, that while it is true that every man has a right to use his own name in his business, it is also true that he has no right to use it for the purpose of stealing the good will of another's business. The right to use a name because of its generic signification does not imply a right to use it to destroy good will belonging to another. L. E. Waterman Co. v. Modern Pen. Co., 235 U. S. 88, 35 S.Ct. 91, 59 L.Ed. 142; Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; De Nobili Cigar Co. v. Nobile Cigar Co., 1 Cir., 56 F.2d 324; R. B. Davis Co. v. Davis, D.C., supra, 11 F.Supp. 269. In cases concerned with one's use of his own surname the power of the court is properly directed towards the correcting of an abuse of the right to use a personal name rather than the denial of that right. Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U.S. 118, 136, 25 S.Ct. 609, 49 L.Ed. 972. So, adjudications precluding use of personal names are not properly to be deemed deprivations of rights." See, also: Gamlen Chemical Co. v. Gamlen et al., D.C. W.D.Pa., 79 F.Supp. 622

In this case, when Goodwin Pharr formed the defendant corporation in 1946, he had actual knowledge of the existence of the plaintiff, of the vegetables canned by plaintiff, of the trade-mark "King Pharr", of the labels of plaintiff, of the trade territory of plaintiff, of the canning processes employed by plaintiff, and other matters relating to the business, which a recent partner would have naturally acquired while in the business. With this knowledge, he, as principal stockholder in complete control of the defendant corporation, proceeded to imitate, very closely, the labels of plaintiff, and distribute goods in some or all of the same markets used by plaintiff. From these facts, the logical inference is that defendant deliberately intended to misrepresent and pass off its goods for the goods of the plaintiff. But, aside from fraudulent intent, the result is the same, for the action of the defendant, through Pharr, would necessarily create confusion as to source, deceive the public and injure the plaintiff. This is all that is necessary to entitle the plaintiff to some relief, a showing of actual confusion being unnecessary. Feil v. American Serum Co., 8 Cir., 16 F.2d 88, 90; Queen Mfg. Co. v. Isaac Ginsberg & Bros, Inc., 8 Cir., 25 F.2d 284, 288; Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, 5, 6; Gamlen Chemical Co. v. Gamlen et al., supra.

The form of the relief to be granted in cases of this sort, with conflicting principles, is particularly troublesome. In deciding the case, the Court has no desire to punish the defendant nor does it wish to unduly restrict it in the operation of its business, but since the plaintiff is entitled to relief, that relief should be sufficient to afford protection of its rights to the use of the mark "King Pharr". To hold that this Court may not accord a deserving litigant complete relief, whatever form that relief may take, would be to say that the invoking of the jurisdiction of this Court is a futile and useless thing. Having decided that this defendant may not use the name "Pharr" in unfair competition with the plaintiff or infringe upon the trademark of the plaintiff, it necessarily follows that if unfair competition and infringement be the necessary and natural result of any use of the name "Pharr" as a mark, then the defendant may not use the name "Pharr" at all on its labels and in its brands.

"Pharr" is the word that catches the eye of the purchaser, bearing in mind the nature of the goods and the customers. The canned goods, particularly okra products, are sold to many colored people and foreign born, especially Greeks. But whatever the intelligence of the customer, he is not likely to minutely inspect a can bearing the name "Pharr's" or "King Pharr" to ascertain if it be the goods of plaintiff or defendant. The character of canned goods refutes such an examination. A different situation exists in the purchase and sale of expensive items, such as safes, pianos, and the like. Possibly in the case of the

latter type article an explanation accompanying the trade-mark would be sufficient to accord the protection called for, and to render justice. It has been so held. Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481; Stark et al. v. Stark. Bros. Nurseries & Orchards Co., 8 Cir., 257 F. 9; Stix, Baer & Fuller Dry Goods Co. et al. v. American Piano Co., 8 Cir., 211 F. 271.

The defendant need not have followed the course that it adopted in imitating the plaintiff's labels, in violation of the known rights of the plaintiff. The canning business, as other modern businesses, is not so highly personalized as to render it unprofitable, other things being equal, when conducted under a label or trade-mark not already in established use by another. It most certainly would be to defendant's advantage to trade under a mark with established reputation and good will, but this is the very thing that it is the purpose of the law to prevent.

When consideration is given to the length of time goods labeled "King Pharr" have been upon the market; the secondary meaning of "King Pharr"; the association of Goodwin Pharr (principal stockholder and moving spirit of defendant) with the "King Pharr" mark and his participation in the partnership which was a predecessor of plaintiff; the knowledge necessarily acquired during such association and participation; the sale of Pharr's interest for a valuable consideration; the formation of the defendant corporation and the subsequent adoption by it of the "Pharr's Finest" brand and labels; and the natural confusion as to source resulting from such adoption, it follows that complete relief can be accorded to the plaintiff only if the defendant be enjoined from using the name "Pharr" in any manner as a trade-mark for its canned goods. It simply would not be practical to require the defendant to print words of explanation as to the source of the goods on the labels, for from the nature of the goods and the manner of distribution to the consuming public, common sense dictates that this procedure would not provide the relief to which plaintiff is entitled. Due to the secondary meaning of the "King Pharr" mark in this case, any canned goods of defendant under a label with the name "Pharr" appearing in any capacity as part of a trade-mark, would naturally tend to create confusion as to source, thus deceiving the public and injuring the plaintiff.

This is not a case where Goodwin Pharr is using his own surname "Pharr" in the sale of canned vegetables, nor is it a case where he has made such use of his name and thereafter assigned the mark to the defendant corporation. The Court is aware of the distinction made by some cases between the situation where a corporation is using a surname as a trade-mark, even though it be the name of a stockholder and officer, and the situation where an individual is using his own name. See: National Distilling Co. v. Century Liquor & Cigar Co. et al., 6 Cir., 183 F. 206; Vick Medicine Co. v. Vick Chemical Co., 3 Cir., 11 F.2d 33; J. & P. Coats, Ltd., v. John Coates Thread Co., C.C.Minn., 135 F. 177. However, in the instant case it is not practical from the standpoint of either party to invoke this principle. The defendant corporation, with one chief stockholder, could be dissolved, and it might be if the fact that it is a corporation be the only block to the use of the name "Pharr" as a trade-mark. A determination based upon this fact would be highly unsatisfactory, and in all probability would not result in a final adjudication of this controversy.

Aside from the determination set forth above, which is based upon a consideration of the law of trade-marks and unfair competition, the Court believes that under the law of contracts, the plaintiff is entitled to the same relief on the question of enjoining the use of the name "Pharr" as a trade-mark for defendant's products.

On March 29, 1945, Goodwin Pharr sold his interest in the partnership, which was a predecessor of plaintiff, for a valuable consideration. The consideration may not have been all that one would hope for, but the fact remains that the sale was voluntarily made, with full knowledge of the facts, and the transaction was not tainted by fraudulent conduct on the part of any one. In all, Goodwin Pharr received ap-

proximately $100,000.00. The sale agreement provided:

"that Pharr does hereby sell, transfer set over and deliver to the said Brush and McPhillips his entire interest in the partnership business heretofore conducted under the name of King Pharr Canning Operations, including all moneys, accounts, machines, supplies of every kind and description, labels on hand, all products on hand and raw materials on hand, together with the good will of the business, the King Pharr brands and trade-marks for all food products, privileges, quotas and all assets of the partnership business, both tangible and intangible."

 A person who has used his surname as a trade-mark may transfer or assign the same to another and thereby divest himself of the right to use his name in a similar business. As stated in Guth v. Guth Chocolate Co., 4 Cir., 224 F. 932, 933:

"It is well settled that a person who has adopted and used his surname as a trademark, or trade-name, may transfer the same with the good will of a business and thereby divest himself of the right to use his name in connection with such a business."

In Richmond Nervine Company v. Richmond, 159 U.S. 293, 16 S.Ct. 30, 34, 40 L.Ed. 155, Mr. Justice Brown stated:

"The fact that such trade-mark bears Dr. Richmond's own name and portrait does not render it unassignable to another."

In Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 144, 32 L.Ed. 526, the court stated:

"It may be that where a firm is dissolved and ceases to exist under the old name, each of the former partners would be allowed to obtain 'his share' in the good will, so far as that might consist in the use of trade-marks, by continuing such use, in the absence of stipulation to the contrary; but when a partner retires from a firm, assenting to or acquiescing in the retention by the other partners of possession of the old place of business, and the future conduct of the business by them under the old name, the good-will remains with the latter as of course. * * * In our judgment, Ryder's claim to any interest in the good-will of the business of Holt & Co., including the firm's trade-marks, ended with his withdrawal from that firm."

See, also: The LePage Co. v. Russia Cement Co., 1 Cir., 51 F. 941, 17 L.R.A. 354; Ball v. Best, C.C.Ill., 135 F. 434.

 The principle of these cases is that one cannot keep for himself the essential thing that he has sold, and also keep the price received. Certainly, the defendant could not use the trade-mark "King Pharr". This would be true even though the trade-mark had not been expressly transferred. Menendez v. Holt, supra. The use of "King Pharr" by the defendant, since Goodwin Pharr is the controlling stockholder, would obviously be in derogation of the contract, and a flagrant violation of the rights of the plaintiff thereunder (plaintiff succeeded to the rights of the former partners of Pharr). Should the defendant corporation, under the control and domination of Pharr, be able to do the same thing by merely altering the mark to "Pharr's Finest"?

The Court has previously discussed the natural effect of the use by defendant of the name "Pharr" as a trade-mark, and that discussion is applicable here, the substance of which is that any use of "Pharr" by the defendant would tend to create confusion as to the source of the products.

It is true that the agreement of March 29, 1945, whereby Pharr transferred his interest to his partners, does not specifically provide that Pharr should not thereafter use his own name in a competing business, but under the facts of this case, that must be the result, whether that result be reached by (1) interpreting the express language of the contract as covering this point, or (2) "implying" the same as necessarily intended from the language used and the purpose to be accomplished by the agreement (if there be a difference in (1) and (2), or (3) by invoking the principle of estoppel. The defendant should be held to the agreement entered into by its principal stockholder.

The execution of this agreement, and the consequent results thereof, makes this a

materially different case from the one where an individual is entering a field for the first time and is conducting his business under his own name. In such a case he has a right to use his own name, subject, of course, to the duty not to infringe another's trade-mark or engage in unfair competition, but in the instant case, that right, if not expressly destroyed by the agreement, may not be asserted by this defendant against the plaintiff as a justification for infringing its trade-mark or unfairly competing with it. And, the fact that the defendant, a corporation, is using the name is immaterial, for Goodwin Pharr may not do through the corporation what he could not do himself.

For this additional reason the defendant should be enjoined from using the name "Pharr" in any manner upon the labels of its products.

The plaintiff contends that the defendant should be enjoined from using the trade-name "Pharr Canning Company, Inc.", as well as from using a trade-mark with the name "Pharr" therein.

Generally, the word "trade name" applies to a business and its good will, while the word "trade-mark" applies to the commodity to which it is affixed. The defendant is using the trade-name for purposes of identification only upon its labels, and as previously stated, from the nature of the goods and customers involved herein, minute inspections of the cans are neither customary nor likely. Therefore, as presently used, the name of defendant corporation does not create confusion as to the source of the products.

The Court in determining this controversy is not attempting to remove the defendant from the canning business, nor to destroy its business because it competes with the plaintiff. It is only concerned with preventing infringement and unfair competition. Neither does the agreement, heretofore discussed, call for a different result.

Therefore, so long as the defendant does not use its corporate name in any manner to infringe upon or unfairly compete with the plaintiff, it should not be enjoined.

The facts of this case do not make it a proper one for invoking the doctrine of laches. The plaintiff has been reasonably diligent in asserting its rights. Furthermore, mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. Menéndez v. Holt, supra. See, also: R. B. Davis Co. v. Davis, 2 Cir., 75 F.2d 499, 500.