## HOUSEHOLD FINANCE CORP. v. FEDERAL FINANCE CORP. et al.
### Civ. No. 645.

United States District Court
D. Arizona.
April 1, 1952.

Charles McCarty (Darnell, Robertson & Holesapple), of Tucson, Ariz., and Paul F. Boyer, of Chicago, Ill., for plaintiff.

J. La Mar Shelley (Johnson & Shelley), of Mesa, Ariz., for defendants.

## McCOLLOCH, District Judge.

Plaintiff sued the defendants for infringement of its trade symbol and for unfair competition. Defendants appeared by counsel but did not contest plaintiff's claims, either by testimony or argument.

The issues, factual and legal, will appear from the quotations from plaintiff's brief, which I have followed, and from the Findings of Fact, Conclusions and Judgment.

Plaintiff's Brief:

The HFC trade symbol is a nontechnical trade-mark, trade name, or service mark.

The HFC trade symbol is not a technical trade-mark, since it is not physically affixed to the goods, wares, or merchandise it is intended to identify. Callmann Unfair Competition and Trade Marks, 1st Ed., Vol. 2, p. 815; Nims, Unfair Competition and Trade Marks, 3d Ed., p. 508.

It falls within that class of identifying symbols, commonly referred to as nontechnical trade-marks, trade symbols, or service marks. Callmann, supra, p. 814; Nims, supra, p. 512.

Although the HFC trade symbol falls within the definition of the term, "service mark", as defined in section 45 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1127:

Service mark. "The term 'service mark' means a mark used in the sale . or advertising of services to identify the services of one person and distinguish them from the services of others and includes without limitation the marks, names, symbols, titles, designations, slogans, character names, and distinctive features of radio or other advertising used in commerce."

HFC has not sought to register such trade symbol because its business, being essentially local in character, is not believed to constitute interstate commerce, and it is only service marks "used in commerce" (meaning commerce subject to the jurisdiction of the Congress of the United States, i. e., interstate commerce) that may be registered.

Therefore, this suit does not arise under the trade-mark laws of the United States and this Court has jurisdiction of this litigation not by virtue of 28 U.S.C. § 1338 (giving United States District Courts original jurisdiction of civil actions arising under any act of Congress relating to patents, copyrights and trade-marks), but by virtue of 28 U.S.C. § 1332, giving United States District Courts original jurisdiction in civil actions between citizens of different states when the matter in controversy exceeds the sum of $3,000. 52 Am.Jur. 637, section 163.

Although the HFC trade symbol is not a technical trade-mark, it is a valuable property, and plaintiff, as owner thereof, has property rights in said trade symbol.

In Callmann, supra, the author states:

"The nature of the plaintiff's right and the theory upon which it is accorded protection have always been closely connected because at common law the courts were usually more concerned with the nature of the plaintiff's right than with the violative acts of the defendant. This attitude has been evident, more or less, in every field of law. In the law of trade-marks it led to a distinction between those cases in which the plaintiff's right was based on infringement of a technical trade-mark, and those in which the plaintiff's trade-mark was a nontechnical mark or trade name. This distinction between symbols which apparent-

ly serve the same purposes and perform the same functions rests 'on the basis of etymological differences alone.' It has no support in the reported decisions and it cannot be justified by general principles." See also, Restatement of the Law, Torts, Vol. 3, pages 563–565.

See also: American Steel Foundaries v. Robertson, 1925, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Standard Oil Company of New York v. Standard Oil Company of Maine, D. C., Maine, 1930, 38 F.2d 677, 679.

In the latter case the Court said:

" 'The good will in business is a valuable asset, and in modern commercial life it is frequently built upon a trade-name. Any trade-mark or name not unlawful in itself nor against public policy, which has become of a pecuniary value or a business advantage, becomes a property right, and, as such, is entitled to the protection afforded by the courts.' "

Jurisdiction of this court under 28 U.S. C. § 1332 is established by evidence of the value of plaintiff's good will, symbolized by the HFC trade symbol.

The "amount in controversy" requirement of Section 1332 is established by proof that the value of the trade-mark or trade name which has been infringed exceeds $3,000.

In Coca Cola Co. v. Brown & Allen, D.C.N.D.Ga. 1921, 274 F. 481, plaintiff sought to enjoin the defendant from making Coca Cola otherwise than according to formula. The court said:

"Jurisdiction is contested because an insufficient amount is said to be involved. It may be that the damages recoverable from Brown & Allen are less than $3,000, or even that none are recoverable because incapable of estimation; but the wrong alleged affects the value of petitioner's good will in business, which may be greatly injured by a continuance of the practice attacked. The value of this good will, which greatly exceeds $3,000, may be looked to in determining the amount involved, and the jurisdiction is thereby sustained."

In Household Finance Corp. v. Household Finance Corp., C.D.N.D.W.Va., 1935, 11 F.Supp. 3, 7, the court said:

"The amount of the controversy is the value of the thing to be protected, plaintiff's good will. It is alleged in the bill of complaint, and it has been shown to the court, that plaintiff's good will amounts to several million dollars."

The results of a public recognition survey are admissible to show "secondary meaning".

The results of a public recognition survey may properly be relied upon by the Court to determine whether or not the trade symbol in question has achieved a degree of public recognition that constitutes "secondary meaning". U. S. v. 88 Cases, More or Less, Containing Bireley's Orange Beverage, 3 Cir., 1951, 187 F.2d 967; People v. Franklin National Bank, 1951, 200 Misc. 557, 105 N.Y.S.2d 81.

By means of the witnesses personally present in court and the stipulation concerning the testimony that would have been given by the field supervisors in Chicago, Detroit, Los Angeles, and Philadelphia, plaintiff adequately discharged the burden of proof in this respect.

The admission of such evidence does not violate the rule barring hearsay testimony. Wigmore, Evidence (3rd Ed., 1940) Vol. 6, Sec. 1731; Richardson, Evidence (7th Ed., 1948) Sec. 246.

HFC'S trade symbol has in fact achieved "secondary meaning" in the minds of the public.

No particular period of user is necessary to establish secondary meaning. It is a question of fact to be determined in each case upon evidence indicating whether or not the symbol has come to have, in the minds of the public, an added significance. The rule is stated in Restatement of the Law, Torts, Vol. 3, Sec. 716, as follows:

"The phrase 'secondary meaning' as thus used, does not mean a subordinate or rare significance. It means rather

a *subsequent significance added to the previous meaning of the designation* and becoming in the market its usual and primary significance.

"Whether or not a designation has acquired this special significance is a question of fact in each case. No particular period of use is required. In some cases the special significance is not acquired even after an extended period of use; in others it is acquired after a brief period. *The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association.* Long, continued use of the designation is evidence from which this 'secondary meaning' may properly be inferred; but the inference is rebuttable." (Italics added.)

Recognition of the identity and ownership of the HFC trade symbol by 61% of the 4000 persons interviewed (who in turn are representative of the public at large) constitutes "secondary meaning".

It is not necessary that plaintiff show actual confusion—likelihood of confusion is sufficient.

It is not necessary that plaintiff show instances of actual confusion; it is sufficient if the plaintiff shows that the marks are sufficiently similar to confuse members of the public and that there is a likelihood or probability that confusion of the public will result.

Nims, supra, says (page 833):

"Similarity does not mean exact likeness—facsimile—a precise copy. If the court decides the likeness is sufficiently great to cause deception of the ordinary purchaser, this is enough. It need not be such an imitation that the two can not be distinguished except by an expert or upon a critical examination by a person who knows the genuine article well. It sometimes even is sufficient that there are points of resemblance."

The crux of the matter is well-stated in a leading English case, Dunhill v. Bartlett and Bickley, 39 R.P.C. 426 (Chancery Division, 1922) at 433, where the court says:

"A man who means to deceive wants to get such resemblances as will enable his goods to be sold, and such differences as will provide him with cover when his practice is discovered. On the one hand, he wants to blind the public, and on the other hand, he wants to blind the court."

Comparison of defendants' trade symbol, as shown in the 53 newspaper advertisements of defendant, placed in evidence by plaintiff, with plaintiff's trade symbol, as disclosed in the numerous exhibits containing same, will clearly indicate that defendants' symbol is deceptively similar to plaintiff's trade symbol and that the use thereof by defendants was and is likely to deceive, confuse, and mislead the public.

## Findings of Fact

Plaintiff is a Delaware corporation incorporated in the year 1925 and is engaged in the business commonly referred to as the small loan business. The authorized and issued capital stock of the plaintiff has a stated value in excess of Fifty Million Dollars. Plaintiff maintains five hundred seventy-four branch offices in three hundred eighty-eight cities in twenty-nine states of the United States and ten Provinces of Canada. Plaintiff maintains a branch office in Tucson, Arizona, which commenced operations in September, 1948. Plaintiff is duly qualified to carry on the small loan business in the State of Arizona and is licensed as a small money lender under Article VIII of Chapter 51, Arizona Code Annotated 1939.

Defendant, Federal Finance Corporation, is a corporation of the State of Arizona with its principal place of business in Tucson, Arizona, and is engaged in the business commonly known as the small loan business, in competition with the plaintiff.

Plaintiff has made more than One Million loans annually during each of the past five years. Plaintiff has made in excess

of fifty-two hundred loans from its Tucson office since it opened its Tucson branch.

Plaintiff has carried on an extensive advertising campaign through the following media: display advertising in magazines of national circulation, radio and television sponsored network programs and local spot announcements, display and classified advertising in local newspapers, advertising in telephone directories, direct mail advertising and solicitation, and placards in street cars and public transportation busses. Plaintiff's annual advertising expenditure during the last five years in the United States and Canada has been approximately Three Million Dollars and of this sum approximately Two Million Seven Hundred Thousand Dollars has been spent annually for advertising in the United States. Since the opening of its Tucson branch, plaintiff has expended a sum in excess of Twenty Thousand Dollars for local advertising in Tucson.

In addition to its program of national and local advertising, plaintiff has carried on a program of consumer education. This program has consisted generally of the publication of a series of booklets designed for consumer education in "Better Buymanship" and a series of booklets designed for consumer education in "Money Management". Plaintiff has caused to be distributed in excess of four million of these educational booklets in the past five years.

In January of 1947 plaintiff adopted a trade symbol, service mark, and form of advertising which consists of the letters "HFC" in distinctive type style arranged in a distinctive manner and enclosed in a circle.

Since the adoption by the plaintiff of the said trade symbol, the said symbol has been an integral part of all visual advertising of the plaintiff, except in those cases in which space limitations have prevented its use. Plaintiff's advertising has been designed around the said symbol, and plaintiff and plaintiff's advertising agencies have planned plaintiff's advertising to the end that the said symbol would become associated in the minds of the public with the plaintiff. The said symbol appears on all note forms, chattel mortgage forms, and loan statement and payment book forms used by plaintiff and appears in many places in the consumer education booklets above referred to.

The value of said trade symbol to the plaintiff is a sum greatly in excess of Three Thousand Dollars.

Plaintiff's good will is not carried on the books of the company as an asset and is not susceptible of precise evaluation. Its value to the company is estimated by plaintiff's advertising manager to be many millions of dollars.

At some time prior to May, 1951, defendant, Federal Finance Corporation, which is also in the small loan business adopted a trade symbol, service mark and form of advertising consisting of the letters "FFC" in distinctive type style arranged in a distinctive manner and enclosed in a circle. The type style adopted by the said defendant for the said symbol bears a striking similarity to the type style adopted by the plaintiff for its symbol. The arrangement of the letters in defendant's symbol is identical to the arrangement of the letters in the plaintiff's symbol. Defendant's symbol is deceptively similar to the plaintiff's symbol.

From the month of March, 1951, to the month of October, 1951, advertisements of defendant, Federal Finance Corporation, containing the above-described symbol adopted by said defendant appeared in the Tucson Daily Citizen and the Arizona Daily Star. The manner of use of said symbol in defendant's advertising was substantially identical to the manner of use of plaintiff's symbol in plaintiff's advertising. From March 7, 1951, to October 2, 1951, approximately fifty advertisements of said defendant using said symbol appeared in said newspapers. This suit was filed October 3, 1951.

Since the year 1948, plaintiff has caused to be conducted by independent market research organizations in selected cities in the United States several surveys for the purpose of determining the degree of public recognition of its trade symbol. These surveys show that since the year 1948 a substantial and increasing percentage of

the public recognizes plaintiff's symbol as identifying the plaintiff.

The latest survey was conducted in September, 1951, in the cities of Chicago, Detroit, Philadelphia, and Los Angeles. This survey was conducted by an independent market research organization and was planned and conducted in a manner designed to reflect impartially, objectively, and accurately the degree of public recognition of said symbol. This survey showed a recognition of plaintiff's symbol by approximately 61% of the more than four thousand persons interviewed.

Plaintiff has received and is receiving in increasing quantities mail addressed to "HFC" at its various branch offices throughout the United States.

Plaintiff has been requested by several telephone companies to maintain a telephone listing under the appellation "HFC" in addition to its regular alphabetical listing under the appellation "Household Finance Corporation."

The use of said symbol by defendant, Federal Finance Corporation, is likely to mislead persons of reasonable intelligence concerning the identity of said defendant and to cause said persons to believe that when dealing with said defendant they are dealing with the plaintiff or with some company affiliated or associated in some way with the plaintiff.

### Conclusions of Law

This Court has jurisdiction of the parties herein and of the subject matter of this litigation.

The plaintiff has a valuable property right in that certain trade symbol, service mark, or form of advertising consisting of the letters "HFC" in distinctive type style arranged in a distinctive manner and enclosed in a circle.

The said symbol has acquired a "secondary meaning" in the minds of the public.

The use by defendant of its trade symbol, service mark, or form of advertising consisting of the letters "FFC" arranged in distinctive type similar to the type employed by plaintiff and arranged in a distinctive manner similar to the manner employed by plaintiff and enclosed in a circle constitutes a violation of the property rights of the plaintiff and constitutes unfair competition.

Plaintiff has no plain, speedy, and adequate remedy at law.

Plaintiff is entitled to an injunction enjoining all of the defendants from continuing to use the above-described symbol, and from using any other trade symbol, service mark, or form of advertising which is calculated to mislead or is likely to mislead any person into believing that in dealing with defendant, Federal Finance Corporation, he is dealing with the plaintiff or some company affiliated with or associated in some way with the plaintiff.