**HEUER et al. v. PARKHILL.**

Civ. A. No. 323.

United States District Court
W. D. Arkansas, Harrison Division.

Sept. 22, 1953.

Pryor, Pryor & Dobbs, Fort Smith, Ark., Kegan & Kipnis, Chicago, Ill., for plaintiffs.

Willis & Walker, Harrison, Ark., for defendant.

JOHN E. MILLER, District Judge.

On August 13, 1953, the Court disposed of a motion for summary judgment filed by the plaintiffs in this case. In disposing of the motion, the Court prepared and filed an opinion, and that opinion outlines the proceedings had in the case prior to and including the motion for summary judgment. See, Heuer v. Basin Park Hotel and Resort, D.C.Ark., 114 F.Supp. 604. Thus it is unnecessary to again outline the proceedings had in the case prior to the trial on the merits. Suffice it to say that disposition of the said motion left only for consideration the following questions raised by plaintiffs' complaint and defendant's counterclaim:

Were the defendant or the plaintiffs guilty of unfair competition by reason of having copied, in substance, advertising matter originated or used by the opposing party, and if so, is the party so offended against entitled to an injunction and/or damages for such unfair competition?

On September 16, 1953, the case was tried to the Court, without a jury. The plaintiffs introduced the ore tenus testimony of J. Stuart Rotchford; the depositions of Simon H. Kahn, Robert S. Huffnagle, Bert J. Kennedy, Ruby Abbas, and Ralph J. Rice; and exhibits 1 to 29, inclusive. The defendant introduced the ore tenus testimony of Joe M. Parkhill and Neal Walters; the depositions of Juanita Mooneyham, Joseph G. Ronga, Janette Williams and Loraine Hosse; and exhibits 1 to 15, inclusive. The parties also introduced joint exhibit 9, and agreed to the introduction of the deposition of Joe M. Parkhill for all purposes. The Court requested briefs from the respective parties, and these have now been received. And now, having considered the ore tenus testimony of the witnesses, the depositions, the exhibits, the pleadings and the briefs, the Court makes and files herein its findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1.

The plaintiffs, Wanita Heuer, Anna Rotchford and Mildred C. Grinnell, are each citizens and residents of the State of Illinois, and are co-partners doing business as Happiness Tours. The defendant, Joe M. Parkhill, is a citizen and resident of the State of Arkansas, and is the sole owner of the Basin Park Hotel and Resort which is located in Eureka Springs, Arkansas. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

### 2.

Plaintiffs have been in the travel agency business since 1938. They maintain two offices in Chicago and one in New York City, and employ thirty-two persons. They sell thirty to thirty-five different "package tours" (i. e., all-expense paid vacations) through 1,200 agencies located in the United States and other parts of the world. Plaintiffs advertise their tours by newspaper, radio, television and travel folders. In 1949 plaintiffs initiated and since that time have operated a tour to Eureka Springs and the Crescent Hotel. The success of plaintiffs' Eureka Springs tour is demonstrated by the fact that during the years 1949, 1950, 1951 and 1952 they printed a total of 130,314 travel folders, and had a total of 3,263 passengers who paid a total of $275,011 for said tours. Plaintiffs made a net profit of approximately $6,000 per year from the Eureka Springs tour.

When selling package tours, the plaintiffs or their agents collect the fees for said tours and then remit to the hotels their share of the said fees. Thus it is necessary that plaintiffs maintain a good credit rating, and the plaintiffs do, in fact, have such a rating. Also, due to the amount of referral business it is necessary that plaintiffs conduct successful tours and fulfill the advertising promises they make, and the plaintiffs have so conducted their tours.

### 3.

In 1945, the defendant, Joe M. Parkhill, purchased the Basin Park Hotel for $45,000 with money advanced him by his uncle. The defendant literally gave a one-half interest in the hotel to Dwight O. Nichols for the reason that they had gone to school together, and had worked together in Chicago, and defendant wanted Nichols to take care of the bookwork for the hotel. They operated the hotel as a partnership until February 18, 1946, at which time Nichols conveyed to defendant his interest in the hotel property and the partnership was dissolved. Since that time defendant has operated the hotel as sole owner.

Defendant in 1945 began selling package tours to his hotel and advertised said tours by means of travel folders, newspapers, and moving pictures. During the years 1945 to 1952 defendant distributed approximately 300,000 travel folders advertising his tour, and, at one time, had approximately 800 agencies selling his tour. Plaintiff's net earnings from the hotel for the years 1947 to 1951 were as follows:

| 1947 | $19,021 |
|------|---------|
| 1948 | 21,492  |
| 1949 | 8,071   |
| 1950 | 4,222   |
| 1951 | 1,364   |

Defendant has paid off the original mortgage on the hotel but has executed new mortgages totaling $43,000 for improvements on the hotel.

The Crescent Hotel began operating in 1946 or 1947, and until that time there was no other hotel in Eureka Springs which was comparable to the defendant's hotel, the Basin Park, in size or quality.

In the past a large part of defendant's business was the result of his package tours, but following the advent of competition by Happiness Tours, the Crescent Hotel and others the defendant's tourist business diminished rapidly.

### 4.

Defendant began distributing travel folders in 1945, and defendant's exhibits 1 to 9 are copies of his folders. The first folders were originated by the defendant, working in conjunction with Neal Walters, an experienced copy writer and advertising executive, and the pictures used in the folders were taken by Dwight O. Nichols and de-

fendant while they were partners in the operation of the Basin Park Hotel.

Defendant's first folder, defendant's exhibit 1, which was published in 1945 and 1946, contained pictures of the Basin Park Hotel, Lake Lucerne, and St. Elizabeth's Church, as well as three other scenic views. The folder is printed in black and white with ordinary type, and the copy, in substance, is concerned with the things that may be done and seen on a tour to Eureka Springs. A portion of the folder is devoted to items which Robert Ripley had featured in his "Believe it or Not" column. The front page of the folder is entitled "8 Day All Expense Vacation, Heart of the Ozark Mountains, Eureka Springs, Arkansas, The Most Unique City in America," and below the title is a picture of an untitled bridge scene.

Defendant's 1947 folder, defendant's exhibit 2, is devoted mostly to copy, with a number of small cartoons interspersed therein. Some of the cartoons are of "hillbilly" characters and some are not. The folder is printed in green type on a white background, and the copy is devoted to things to do and see in the Ozarks. The front page of the folder is entitled "For More Fun and Better Health, Plan Your Vacation at The Famous Basin Park Hotel and Bath House in Eureka Springs, Arkansas, Miracle Spa of the Ozarks," and below the title is a picture of the Basin Park Hotel.

Defendant's exhibit 3, which is another 1947–1948 folder, is printed in black and white, and except for the change of two or three pictures, is substantially the same as defendant's 1945–1946 folder. This 1947–1948 folder is entitled "It's Springtime in The Ozarks All Year 'Round, Eureka Springs, Arkansas, All Expense Vacation, The Most Unique City in America."

Defendant's exhibit 4 is another 1947–1948 folder and is substantially the same as defendant's exhibits 1 and 3 above referred to. This folder is entitled "The Friendliest Hotel in the Ozarks, Basin Park Hotel and Bath House, Eureka Springs, Arkansas, Miracle Spa of the Ozarks, Ideal for Honeymooners."

Defendant's exhibit 5 is a small, special Labor Day folder which is in black and white and is all copy except for two hillbilly cartoons.

Defendant's exhibit 6 is another 1947–1948 folder, printed in brown and white, and is composed almost entirely of pictures with very little copy. The copy in this folder does not mention Robert Ripley. The folder is entitled "Miracle Spa of the Ozarks, the Basin Park Hotel in Eureka Springs, Arkansas, More Fun and Better Health," and over the title is a picture of the Basin Park Hotel.

Defendant's exhibit 7 is the 1948–1949 folder, which is a multi-colored folder. Aside from the coloring, however, this folder is much like defendant's exhibit 6, except for the front page. The front page is printed in red, brown, yellow, green and blue and is entitled "Howdy! Welcome to The Highest Point in the Ozarks, Eureka Springs, Arkansas, Miracle Spa of the Ozarks, The Basin Park Hotel and Resort ....More Fun....Better Health....," and a picture of the Basin Park Hotel is centered in the page.

Defendant's exhibit 8 is the 1950, 1951 and 1952 folder, which is printed in green, black and white. The general layout of this folder is different from defendant's prior folders, although the copy and pictures are much the same. This folder is entitled "Welcome to the Highest Point in The Ozarks, Miracle Spa of The Ozarks, Basin Park Hotel and Resort, Eureka Springs, Arkansas....More Fun....Better Health....," and a picture or drawing of the Basin Park Hotel is centered in the page.

All of defendant's folders except exhibits 5, 8 and 9 are printed on glazed or slick paper and borders of photographs are square or rectangular.

### 5.

When plaintiffs began operating the tour to Eureka Springs in 1949, Mr. J. Stuart Rotchford, manager of Happiness Tours, contacted Ralph J. Rice, a commercial artist, and Mr. Frank Ingle, a copy writer, and they originated plaintiffs' 1949 folder. Mr. Rice did all of the art work and Mr.

Ingle did the copy work. Photographs used in the folder were furnished by Mr. Dwight O. Nichols who was, at that time, connected with the Crescent Hotel.

Plaintiffs' exhibit 2 is their 1949 folder. Said folder is printed in black and yellow, and cartoons of hillbilly characters are interspersed through the folder. The headings throughout the folder are wavy and appear to have been drawn rather than printed. Likewise, borders of photographs used in the folder are curved rather than straight. The folder is entitled "Smack in The Heart of The Ozarks at Eureka Springs Arkansas, The Famous Castle in The Air, Happiness Tours." Centered in the page is a picture or drawing of the Crescent Hotel and at the bottom of the page is a cartoon of a hillbilly with a gun and a jug. (This cartoon was originated and drawn by Ralph J. Rice.)

Plaintiffs' 1950, 1951, 1952 and 1953 folders are substantially the same as their 1949 folder. The general layout is the same, and about the only noticeable changes are the few pictures which have been replaced with others. The front pages of all of plaintiffs' folders are identical except that the words "Happiness Tours" were moved from the bottom of the page to the top of the page in the 1951 folder. All of plaintiffs' folders are printed on unglazed paper, and about the only easily discernible difference in the folders is that each year the color is changed.

### 6.

Some of the photographs taken by Dwight O. Nichols, while he was a partner of the defendant, have been used by the plaintiffs in their folders. The circumstances surrounding the taking and use of the pictures are as follows:

The defendant and Nichols owned their own cameras. Using film purchased by the Basin Park Hotel, Nichols took pictures of various scenes and activities around Eureka Springs. The defendant, himself, posed for some of the action pictures. All the pictures used by defendant in his folders were taken by Nichols and defendant before their partnership was terminated. Even subsequent to dissolution of the partnership, the defendant and Nichols shared a dark room and either of them could and did use the negatives to print pictures for various purposes. At the time Nichols conveyed his interest in the hotel to the defendant and terminated the partnership nothing was said about the pictures or negatives, and since that time Nichols has used the pictures as he wished, although defendant still has possession of some or all of the negatives. The defendant himself has distributed the pictures to the Chamber of Commerce, Frisco Railroad, and others, both for the promotion of the Basin Park Hotel and for the promotion of the City of Eureka Springs. Others who have obtained possession of and are using said pictures include the Ozark Travel Association, Berry Tours, Ozark Playgrounds Association, Trailways Magazine, Diamond Mid-Continent Petroleum Corporation, and Lion Oil Company. It is probable that most or all of these pictures were obtained from Dwight O. Nichols, but none of them are works of art.

The defendant, until this lawsuit, had never complained of the use of these pictures by anyone.

### 7.

As heretofore stated, prior to the tourist season of 1945, the defendant had been able to obtain and hold the services of several hundred agencies for the sale of his tour to Eureka Springs and the Basin Park Hotel, and it seems that prior to 1949 the defendant's tour was the only one that was extensively advertised or vigorously pushed in the area. The defendant was offering only the one tour, that is the tour to Eureka Springs, and therefore the agencies selling the tour had only one tour of defendant's to offer to the public. And, when the plaintiffs inaugurated their tour to Eureka Springs and the Crescent Hotel, most, if not all, of the agencies refused to receive the folders of the defendant, principally because the defendant was offering only the one tour to the one area, while the plaintiffs were offering the agencies many tours for sale to various other areas as well as to Eureka Springs, and the action taken by the agencies in refusing to promote the defendant's tour was largely re-

sponsible for the decline in the number of tourists who bought the tour arranged by defendant. When the defendant was confronted with that situation he realized that he would lose the tourist business, and therefore conceived the idea of having printed the folder, joint exhibit 9.

On May 25, 1951, the following letter was written by one of defendant's employees at his request:

"Mr. B. F. Huffnagle

"Chicago, Ill.

"Dear Mr. Huffnagle

"I would like to know how much ten thousand folders like the one enclosed with only changes being a picture of Basin Park Hotel on front cover and inside folder where ever Crescent Hotel is mentioned put Basin Park, would cost me.

"Please let me know if you could get this folder out for me.

"Sincerely

"Joe M. Parkhill"

Since the folder enclosed by Parkhill was one of plaintiffs' folders, Mr. Huffnagle consulted Mr. J. Stuart Rotchford, manager of Happiness Tours, and Mr. Rotchford wrote defendant on May 31, 1951, informing him that permission could not be given to him to copy plaintiffs' folder. Then defendant contacted Mr. Simon H. Kahn, who printed 10,300 copies of joint exhibit 9 for him, said copies being delivered to defendant on October 8, 1951.

This folder, joint exhibit 9, is practically the same as plaintiffs' 1951 folder, plaintiffs' exhibit 4, the only apparent changes being the picture of the Basin Park Hotel on the front page and the words "Basin Park Hotel" being substituted for the words "Crescent Hotel" in the copy. Defendant only distributed a few of these folders, and has held the remainder of the folders pending disposition of this case.

8.

The plaintiffs' folders of its Eureka Springs tour have remained substantially the same from 1949 to the present time. These folders have a distinctive general layout and over-all appearance, and have become identified with a tour to Eureka Springs sponsored by the plaintiffs, Happiness Tours.

9.

The general lay out and style of the defendant's folders have been changed from time to time as heretofore set forth in Finding of Fact No. 4, and for that reason it is doubtful whether defendant's folders have become identified with defendant's tour to the Basin Park Hotel. That is, because of the dissimilarity between the folders from time to time, a prospective purchaser who read, for example, defendant's exhibit 2, and at a later date read defendant's exhibit 7, would not connect the latter folder with the Basin Park Hotel since the said folder is so different in layout and over-all appearance from the earlier folder.

But, regardless of whether defendant's folders had become identified with defendant's tour to Eureka Springs and the Basin Park Hotel, the plaintiffs' folders are in no wise copies of defendant's folders. The defendant complains of the use by plaintiffs in their folders of certain descriptive words of the Ozarks area. However, all of the words and phrases used by the plaintiffs as well as the defendant are common, generic or descriptive words and phrases of the area. And, a comparison of all of defendant's folders with all of plaintiffs' folders convinces the Court that plaintiffs' folders were not in substance or form copies of the composite folders of the defendant, and would not confuse a prospective tourist in his selection of a tour to Eureka Springs. It is true that some of the pictures used in plaintiffs' folders had been taken by defendant and Dwight O. Nichols and had been used by defendant in his folders, but the general layout and over-all appearance of plaintiffs' folders are so different from defendant's folders that no prospective tourist would glance at or read plaintiffs' folders and confuse plaintiffs' tour to Eureka Springs and the Crescent Hotel with defendant's tour to Eureka Springs and the Basin Park Hotel.

670

## 10.

It appears to the Court that plaintiffs' folders, because of their unique layout and appearance, have more tourist appeal than do defendant's folders. Evidently the defendant was of the same opinion, because when he observed that plaintiffs' folders contained some pictures that had been taken by him and Dwight O. Nichols, he concluded that he had the right to appropriate the form and substance of plaintiffs' folders.

The folder defendant had printed in the latter part of 1951, joint exhibit 9, is the same in general layout and appearance as plaintiffs' folders, and would likely cause confusion in the minds of prospective purchasers and enable defendant to pass off his tour as a tour arranged and sponsored by the plaintiffs.

## 11.

Since defendant has distributed less than 100 of the folders, joint exhibit 9, plaintiffs have not been damaged thus far by defendant's activities, but distribution of the remainder of the folders would cause serious damage to plaintiffs' business.

### Conclusions of Law

### 1.

The Court has jurisdiction of the parties to and the subject matter of this cause of action.

### 2.

The following quotations illustrate the law relating to the copying of advertising matter by competitors:

"The general rule is that the appropriation of another's advertising matter or method is not of itself unfair competition, although it may become such where it induces or may induce the public to suppose that in dealing with the appropriator they are dealing with or obtaining the product or services of the originator * * *". 52 Am.Jur., Trademarks, Tradenames, and Trade Practices, Section 116, Page 595.

"Unfair competition begins where imitation results in the deception of the customers of the party complaining." International Heating Co. v. Oliver Oil Gas Burner & Machine Co., 8 Cir., 288 F. 708, 711, 30 A.L.R. 611.

"At 26 R.C.L. 875 it is stated: 'Unfair competition ordinarily consists in the simulation by one person for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor.'" Esskay Art Galleries v. Gibbs, 205 Ark. 1157, 1162, 172 S.W.2d 924, 926.

See also, Judson Dunaway Corporation v. Hygienic Products Co., 1 Cir., 178 F.2d 461, 466; King Pharr Canning Operations, Inc., v. Pharr Canning Co., Inc., D.C.Ark., 85 F.Supp. 150, 153.

In view of the law above stated, it is clear that the defendant, in simulating plaintiffs' folders and attempting to pass off his tour as a tour conducted by plaintiffs, was guilty of unfair competition.

### 3.

Plaintiffs are entitled to an injunction against the printing or use by the defendant of folders substantially and confusingly similar to plaintiffs' folders, and particularly against the printing or use by the defendant of copies of joint exhibit 9.

The copies of joint exhibit 9 now in the possession of the defendant should be delivered to the Clerk of the Court for destruction.

### 4.

Plaintiffs have not established and are not entitled to recover damages for the said unfair competition on the part of the defendant.

### 5.

Plaintiffs were not guilty of unfair competition and defendant's counterclaim against plaintiffs should be dismissed.

### 6.

In view of the particular facts and circumstances in this case, the plaintiffs and the defendant should be required to pay their own costs.

A judgment in accordance with the above should be entered.