**GASTON'S WHITE RIVER RESORT, a corporation, Plaintiff,**

v.

**Ted and Dana RUSH, d/b/a Sportsman's on the White River, Defendants.**

**Civ. No. 87–3060.**

United States District Court,
W.D. Arkansas,
Harrison Division.

June 20, 1988.

Van A. Gearhart, Poynter, Huckaba & Gearhart, Mountain Home, Ark., John C. Brezina, Brezina & Buckingham, Chicago, Ill., for plaintiff.

Frank H. Bailey, Mountain Home, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case is before the court on stipulations of the parties. After cross motions for summary judgment had been filed, the parties, at the request of the court, stipulated that the court may decide the issue of liability on the record before it, with the exceptions made by defendants' objection to the affidavits of James Gaston, Shelby Woods, Arthur Law, Roger Faris, and John C. Brezina. After reviewing the pleadings, the briefs in support thereof, the deposi-

tions and the exhibits, the court finds that the plaintiff is entitled to relief from the unfair competition caused by defendants' use of a confusingly similar mark.

Gaston's, a fisherman's resort on the White River, brought this action on August 31, 1987, against the defendants, Ted and Dana Rush d/b/a Sportsman's on the White River, alleging unfair competition, trademark infringement, and trademark dilution. The plaintiff specifically alleges six counts citing: 1) 15 U.S.C. § 1125(a) for federal unfair competition and 2) 15 U.S.C. 1114 for federal trademark infringement; 3) common law trademark infringement; 4) common law unfair competition; 5) Ark. Code Ann. § 4–71–112 (1987) for state trademark infringement; 6) and violation of Ark.Code Ann. § 4–71–113 (1987) for state trademark dilution. Jurisdiction is vested in the court under the Lanham Act, 15 U.S.C. §§ 1116, 1125(a), 1114, and 28 U.S.C. 1338(b).

## I. BACKGROUND

Gaston's present owners took over the business in 1959 and incorporated under Arkansas law in 1968. The business used a rainbow trout in its advertisements long before 1974, when the advertising firm, Smith, Jennings and Cain, incorporated the trout into a design mark which became at that time and has consistently continued to be the logo used by Gaston's on its promotional material including advertising and product identification. Gaston's applied for trademark registration for the logo in June, 1986, which they received on November 24, 1987, Reg. No. 1,466,622, and, subsequently, on February 5, 1988, registered the trademark under Arkansas law. Trademark registration for the name, Gaston's was granted separately under Trademark Registration No. 1,463,095.

The defendants, Ted and Dana Rush, have operated a similar business within approximately five miles of Gaston's since 1976 when they purchased Sportsman's, a resort managed by various owners since 1958. They used a German brown trout in advertisements designed by Jan Gosnell until 1983 when Roger Faris, a sign painter, developed a logo which incorporated the trout into the design which is the subject of this litigation.

The evidence indicates that the Rushes began to look for a design mark in 1982. They spoke first with a commercial artist from Kansas City, Arthur Law, who testified that, after submitting various designs, he formed the impression that they wanted him to simulate Gaston's logo and that he was indirectly being asked to do something unethical. He testified that the finished product was, in his opinion, a simulation of Gaston's logo.

In February of 1983, the Rushes employed a local sign painter, Roger Faris, who testified that he made approximately a half dozen rough pencil sketches before presenting the accepted logo, the present one with the fish pointing leftward. He testified that, when asked by Dana Rush to change the direction of the fish, he protested to her that the fish should face leftward or the design would be too close to Gaston's. Faris further testified that, thinking the logo too similar to Gaston's, he showed the left-forward-fish pencil sketch to James Gaston who "shrugged his shoulders", and that, after painting the logo on a billboard, he did not paint the logo for Sportsman's again. The Rushes acknowledged that Roger Faris designed the logo which was subsequently duplicated on ashtrays, coffee mugs, matchbooks, shirts, sweatshirts, cups, bank checks, business cards, stationery, road signs, vans, and advertising literature which first appeared as color brochures in January of 1987. Both Ted and Dana Rush testified they had no recollection of conversations with either Law or Faris concerning similarity of the two logos.

Gaston testified that he first saw the Sportsman's logo on a road sign in Bull Shoals either late in 1983 or early 1984 and that he phoned the law firm of Young, Patton and Folsom in Texarkana to look into the matter. After approximately a year and a half when he decided the law firm was not doing anything, he contacted a local attorney, Van Gearhart. Soon thereafter, he employed the present firm, a specialist in trademark litigation, and a

cease-and-desist letter was sent to the defendants in May, 1987. The present suit was filed in August, 1987.

Plaintiff seeks a preliminary and permanent injunction against defendants' further use of the logo or any similar design which might be adopted in the future and against any actions which might indicate to the general public Gaston's support or affiliation with the defendant; written evidence of compliance to be filed within 30 days after injunctive relief; surrender to the court of all matter using the logo; an accounting since notice of infringement; and a judgment reflecting the profits realized by defendant and damages suffered by plaintiff due to the use of the offending logo. Defendants assert the affirmative defenses of waiver, estoppel and laches.

## II. THE ISSUES

The court now moves to the question of whether the plaintiff is entitled to relief. Plaintiff has alleged that defendants' use of the mark constitutes unfair competition under federal statute and state common law, trademark infringement under common law, state and federal law and trademark dilution under state law.

A. *Unfair Competition and Trademark Infringement.* Plaintiff bases its claim for unfair competition in the federal statute proscribing false designation of origin:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation including words or other symbols tending falsely to describe or represent the same and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that

he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. 1125(a).

Plaintiff contends that the defendants, by use of a similarly confusing design mark, falsely designated the origin of their services. It is not when imitation occurs, but it is only when imitation is a misappropriation of another's assets, either tangible or intangible, that the tort of unfair competition arises. Plaintiff and defendants supply similar services to fishermen including resort hotel and restaurant accommodations, boat rental and dock facilities as well as guide services. The businesses are located within a five mile radius and directly compete with each other. Plaintiff alleges that defendants' use of a confusingly similar logo constitutes a "misappropriation of the distinguishing and identifying features" of the logo which was created through considerable expense and effort. Plaintiff further contends that defendants by using the logo falsely represent the origin of their services, and appropriate the reputation and good will of the plaintiff to themselves thereby harming the plaintiff and deceiving the public.

The purpose of the federal statute is to protect both consumers and competitors against all forms of misdescription or misrepresentation of products and services. *C.B.S., Inc. v. Springboard Intern. Records,* 429 F.Supp. 563, 199 U.S.P.Q. 422 (S.D.N.Y.1976). The protection provided by this section of the federal laws governing unfair competition is broader than 1114 which applies specifically to trademark owners. This law protects competitive users of trademarks regardless of trademark ownership. *D & M Antique Import Corp. v. Royal Saxe Corp.,* 311 F.Supp. 1261, 166 U.S.P.Q. 302 (S.D.N.Y.1970). Congress intended to create a statutory remedy against unfair competition previously protected by common law. *Norman M. Morris Corp. v. Weinstein,* 466 F.2d 137, 175 U.S.P.Q. 130 (5th Cir.1972).

Plaintiff alleges that defendants' conduct not only violated federal law, but also violates state common law and the general

common law of unfair competition. Plaintiff's allegations of unfair competition therefore sound in both the federal statute and the general common law which is codified therein. Insofar as plaintiff's action rests on the state common law of unfair competition, the Arkansas law is orthodox and in accord with the general principles of the law of unfair competition. *Shoppers Fair of Arkansas, Inc. v. Sanders Company,* 207 F.Supp. 718, 134 U.S.P.Q. 545 (W.D.Ark.1962) *aff'd;* 328 F.2d 496, 140 U.S.P.Q. 637 (8th Cir. Ark.1964); *Liberty Mutual Insurance Co. v. Liberty Ins. Co. of Texas,* 185 F.Supp. 895, 903, 127 U.S.P.Q. 312 (E.D.Ark.1960); *Beneficial Loan Corporation v. Personal Loan & Finance Corporation,* 100 F.Supp. 838, 845, 92 U.S.P.Q. 14 (E.D.Ark.1951); *Liberty Cash Groceries, Inc. v. Adkins,* 190 Ark. 911, 82 S.W.2d 28 (1935); *Fine v. Lockwood,* 179 Ark. 222, 14 S.W.2d 1109 (1929);

■ For an act to constitute unfair competition, the act complained of must be one that creates in the ordinary course of business an unfair method of competing. Courts in Arkansas define "unfair competition" as "the simulation by one person, for the purpose of deceiving the public, of the names, symbols or devices employed by a business rival ... thereby obtaining for such person the benefits properly belonging to such person's competitor." *Esskay Art Galleries v. Gibbs,* 205 Ark. 1157, 172 S.W.2d 924, 58 U.S.P.Q. 623 (1943). The term means a course of dealing which leads, or is likely to lead, consumers into believing that the goods or services of one supplier are those of another. *Southwestern Bell Tel. Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900, 182 U.S.P.Q. 193 (W.D.Ark.1974); *Heuer v. Parkhill,* 114 F.Supp. 665, 99 U.S.P.Q. 33 (W.D.Ark.1951). Arkansas law of trademarks, trade names and unfair competition is in accord with the general law. *Southwestern Bell Tel. Co. v. Nationwide Independent Directory Services, Inc.,* 371 F.Supp. 900, 182 U.S.P.Q. 193 (W.D.Ark.1974). Accordingly, plaintiff's cause sounding in Arkansas trademark infringement, Ark.Code Ann. § 4–71–112 (1987), must meet the test required by the Lanham Act provisions for unfair competi-

tion and trademark infringement. Arkansas trademarks are protected under the law of unfair competition through the registration statute as well as through the common law. A trademark valid at common law is valid under Arkansas law. *Pullan v. Fulbright,* 287 Ark. 21, 23, 695 S.W.2d 830, 227 U.S.P.Q. 493 (1985).

■ In order to establish its claim that the defendant have competed unfairly and infringed its rights in the design mark, plaintiff must show: 1) that it owns the design mark and has used the mark in a trademark sense, 2) that the design was used without its consent, and 3) that such use is likely to cause confusion. 15 U.S.C. § 1125(a).

■ 1) *Ownership and Use of the Mark.* Plaintiff's long term use of the mark indicates ownership. Legal rights in trademarks and service marks arise out of use. The rights are acquired by prior use, not by registration. Gaston's used the trademark consistently since it was designed in 1974. Before that year, the rainbow trout was used as a symbol for the business for as long as James Gaston can remember and he has operated the business for twenty-nine years. Gaston's established the fact of usage in order to register the service mark. If a mark is registered, the registration itself gives rise to a presumption of use. *National Tuberculosis Ass'n. v. Summit County Tuberculosis and Health Ass'n,* 122 F.Supp. 654, 101 U.S.P.Q. 387 (N.D. Ohio 1954). Although the mark was not first registered until November of 1987, its use over a long period coupled with registration proves that Gaston's did indeed own the mark and such use brings the mark under the protection of the common law as well as of the statutes. Testimony overwhelmingly supports Gaston's ownership of the mark and Gaston's yearly advertising expenditures using the mark in a commercial service sense establish without doubt that the mark functioned to designate the source of Gaston's services.

2) *Use Without Consent.* Gaston's alleges that the defendants used the mark without its approval and against its will. James Gaston testified that when he first

saw the infringing service mark in late 1983 or early 1984, he began to seek legal redress. Defendants argue that the plaintiff actually learned of their service mark in early 1983 and that plaintiff's delay in filing suit constitutes laches. Defendants argue that Gaston's had knowledge from the earliest possible point in time—when Faris showed Gaston the pencil sketch. Defendants define the time which elapsed until the filing of the suit as a period of acquiescence in which the plaintiff knew of the service mark and failed to protest. Plaintiff testified that during this period of time, he was seeking an effective way to protest. He employed attorneys to look into the matter.

▇▇ To establish the defense of laches, defendants must show delay in asserting rights or claims, that the delay was not excusable and that undue prejudice resulted to the defendant. *Am–Brit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 1 U.S.P.Q.2d 1161 (11th Cir.1986), *cert. denied* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). The defendants argue that the time lapse was a long period. Reasonableness of delay is determined by the circumstances. The court is not persuaded that under the circumstances, four and one-half years constitutes an unconscionable delay in a business which is seasonal in nature. More importantly, the court finds that the plaintiff did not sit on its rights during the period of time but rather sought to effectively assert them. Plaintiff argues that defendants' invasive appropriation of Gaston's service mark was "gradual and progressive in character." *A.E. Staley Mfg. Co. v. Staley Milling Co.*, 253 F.2d 269, 116 U.S.P.Q. 546 (7th Cir.1958). Sportsman's use of the design mark increased from a single road sign in 1983 to extensive use in brochures, advertising media, and extensive reproduction on products by 1988. Sportsman's appropriated two similar advertising modes during that time, the starred map to locate its facility and the adoption of cost line advertising to further promote its services. The encroaching nature of Sportsman's infringement on Gaston's service mark indicates that Gaston's may have become increasingly aware of the infringement. The facts, however, support

a finding that James Gaston, although he may have become increasingly aware of the infringement upon Gaston's service mark, was concerned and actively protesting the use of the mark from the time in which he testified he first knew of Sportsman's similar logo.

3) *Likelihood of Confusion.* Finally and most importantly, the plaintiff must prove that defendants' unauthorized use of an infringing mark is likely to confuse the consuming public. Judge Henley has defined the controlling question to be answered in cases of unfair competition:

> Whether the defendant has created a situation likely to cause confusion—a situation in which it is likely that an appreciable number of [consumers] ... possessing ordinary prudence and using that degree of care to be expected of such [consumers], would confuse defendant's services with those of the plaintiff.

*Liberty Mutual Insurance Co.*, 185 F.Supp. at 908.

▇▇ Likelihood of confusion is a question of law to be determined by seven factual considerations: a) strength of owner's mark, b) proximity of the goods or services offered, c) similarity of the marks, d) evidence of actual confusion, e) marketing channels used, f) type of services and the degree of care likely to be exercised by the consumer, g) the defendants' intent, and h) the likelihood of expansion. *General Mills v. Kellogg Co.*, 824 F.2d 622, 3 U.S.P.Q.2d 1442 (8th Cir.1987); *A.M.F., Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49, 204 U.S. P.Q. 808 (9th Cir.1979); 3A *Callman Unfair Competition, Trademarks & Monopolies*, § 82.1 (4th Ed.1983).

▇▇ a) *Strength of the mark.* Gaston's mark is a strong and distinctive one. The use of the mark for a period of approximately fourteen years with substantial amounts expended yearly for national advertisement coupled with the fact that Michelin sought out Gaston's for a cooperative national promotion evidences the strength of Gaston's mark. The testimony is undisputed in affirming that Gaston's image is strong and at least one witness identified Gaston's as the "leader" in the

field of resorts in Arkansas. Ted Rush testified that Gaston's is one of the best known fishing resorts in this part of the country.

Since the primary function of a trademark is to identify the origin of goods, not their nature, a merely descriptive or suggestive designation cannot become a trademark unless such designation has acquired a special significance in the public mind known as secondary meaning. *Proxite Products, Inc. v. Bonnie Brite Products Corp.*, 206 F.Supp. 511 (S.D.N.Y.1962). The Lanham Act provides that a mark which is "merely descriptive or deceptively misdescriptive, primarily geographically descriptive of registrant's products or deceptively misdescriptive of them or is primarily a surname will not be registered." 15 U.S. C. § 1052(e). The Act also requires a five year period of exclusive and continuous use before registration of a mark. 15 U.S.C. § 1052(f). Registration of a mark is prima facie evidence that the mark is distinctive, i.e. has acquired a secondary meaning. *Flavor Corporation of America v. Kemin Industries, Inc.*, 358 F.Supp. 1114 (S.D. Iowa 1973), affirmed 493 F.2d 275 (8th Cir. 1974). Both the evidence and the fact of registration establishes the fact that Gaston's is a strong, distinctive mark.

b) *Proximity of Goods and Services Offered.* The logos used by Gaston's and Sportsman's are used to identify similar services. Both offer fishing services which include guided overnight camping trips, hotel and restaurant accommodations and sport-related gift items. Both attract customers who are interested in fishing and outdoor life. Both owners testified that their customers may come from anywhere in the United States but that most come from the states around Arkansas. They are direct competitors for the same market and offer their services within a five mile radius of each other.

c) *Similarity of the Marks.* The existence of confusing similarity, or the determination that confusion is likely, is a question of law within the exclusive judgment of the court. *Sears, Roebuck and Co. v. Allstate Driving School, Inc.*, 301 F.Supp. 4, 163 U.S.P.Q. 335 (E.D.N.Y.1969). The court in comparing the logos, must place itself in the consumer's position and undertake a task of "mental analysis and visual reaction." *Callman, supra,* § 20.08.

The Gaston's and Sportsman's logos are of a composite nature. "A composite mark is one that is composed of several distinct parts." *Callman, supra,* § 20.25. In comparing the logos, the court must consider the design mark as a whole, must not look to the name, to the pictorial elements, or at the lettering and word arrangement alone. Gaston's logo consists of a rightward facing rainbow trout jumping through or out of an oval with customized lettering, *Gaston's,* at the top of the oval and the words "on the White River" at the bottom. Sportsman's logo consists of a rightward facing German brown trout jumping through or out of an oval with *Sportsman's* lettered at the top of the oval and the words, White River Resort, at the bottom. Both logos have the trout "coming through the oval" in a similar way. At times, both are "reversed out." William R. Boswell, a commercial artist, described this process as one in which "whatever is printed behind [the format] was dropped out." Shelby Woods, experienced for twenty years in the advertising business, testified that the two logos were close in compositional make-up.

To determine similarity, the court must consider the defendant's entire format as a unit, as compared with the plaintiff's entire format as a unit. *Liberty Mutual Ins. Co.,* 185 F.Supp. at 909. The entire format of the logos is similar. The words are straight across the top. At the bottom, the oval creates a concave and the words are adjusted around this form in like manner. The upper type is similarly distinct and the spaces between the letters are filled in. The words designating location on the White River are in the same type style. The court has examined numerous examples of both logos in newsletters, magazine ads, city chamber publications, tour guides and road signs, and is impressed by the similarity of the two. *See* copies of logos in accompanying appendix.

Although the court must consider the design as a unit, the court may analyze

each feature to determine its significance to the unit as a whole and to ascertain the dominant feature of the mark. There is no flat rule as to what will prove to be the dominant feature of a composite design. The dominant feature is "that which is most noticeable and most unavoidably attracts the attention of the public." The question to answer in determining the dominant feature of a logo is: What will the public remember? *Callman, supra,* § 20.25. Defendants argue that the dominant feature of the logo is the name. Although verbal features normally dominate an accompanying design, *Amoco Oil Co. v. Amerco, Inc.,* 192 U.S.P.Q. 729 (T.T.A.B. 1976), pictorial representations have been deemed so impressive that the dissimilarity of words cannot offset the overall design. *Finn v. Cooper's, Inc.,* 292 F.2d 555, 130 U.S.P.Q. 269 (C.C.P.A.1961).

The Court of Customs and Patent Appeals, in dealing with a composite logo, noted that the court should consider "the visual impact" which would be made on the consuming public. The designs in question create the same visual impression. It is only on close examination that the distinctions of words and species of trout are determined. The dominant aspect of a composite mark may be its motif or the arrangement or collocation of its parts. *Callman* § 20.32. Pictorial marks alone have been held to be distinctive in form but the court does not find that the jumping trout of Gaston's logo is in and of itself the dominant or distinctive aspect of the logo. The court finds that the unique arrangement of Gaston's logo is the dominant feature and it is this unique arrangement that Sportsman's has emulated.

The accompanying words do not sufficiently detract from the motif to distinguish the marks. In a similar situation, the court in the District of Arizona ruled that a service mark composed of the letters HFC, in distinctive type style arranged in a distinctive manner enclosed in a circle, was infringed by a similarly distinctive arrangement of the letters, FEC. *Household Finance Corp. v. Federal Finance Corp., et al.,* 105 F.Supp. 164, 165, 94 U.S.P.Q. 222 (D.Ariz.1952). The words, Gaston's and Sportsman's, although different, are made to appear the same through similar configuration. Both have two syllables. The first and last letters are emphasized in the logo with the last letter being the same and similarly presented. The words designating geographic location are the same and this suggests further that the two marks refer to the same source. The conclusion is inescapable that the two design marks, considered as an entire format or unit, are confusingly similar.

To constitute infringement, it is not necessary that the defendants appropriate the whole of plaintiff's mark, and imitation need only be slight if it attaches to the salient features of the plaintiff's mark. *Pickle–Rite Co. v. Chicago Pickle Co.,* 171 F.Supp. 671, 121 U.S.P.Q. 128 (N.D.Ill. 1959). The court finds that the salient or dominant feature of the composite mark is its entire format. Infringement of a composite mark can be based upon the simulation of something less than the entire mark. A defendant does not necessarily avoid the charge of infringement by appropriating only part of a trademark; if his usage is likely to deceive the public, it cannot be permitted. *Callman, supra,* § 20.25 at 158.

d) *Evidence of Actual Confusion.* Although actual confusion is not the test for trademark infringement, it is evidence of the likelihood of confusion. The majority of the witnesses testified to the lack of actual confusion. However, Gaston testified that his customers appeared generally to be confused by the logos. Two witnesses testified to actual confusion. William R. Boswell, who has worked in advertising and promotional printing for twenty-nine years, testified that he received a letter from Sportsman's on stationery headed by the logo and read the letter through to the signature under the misapprehension that the logo was Gaston's. Alan Leveritt, whose work is closely associated with the advertising market, testified that he was detoured by Sportsman's sign on his way to Gaston's. The confusion caused him to be late for an appointment. The fact that people knowledgeable in the advertising field were confused by the logos indicates

that confusion is likely. The confusion involved in following road signs in an unknown or little known area is likely to be experienced by customers who travel to a resort for the first time as well as on a later trip. Although in an established business, many people come back, obviously not all guests are returnees. The public has a right not to be confused about the source of services.

e) *Marketing Channels Used.* The evidence indicates that the owners of both Gaston's and Sportsman's advertise in the same media. In addition to road signs, their advertising appears in publications which emphasize sports, fishing and vacations. The exhibits examined by the court reveal that they are often featured in the same publication, at times on facing pages and at other times on different pages. The conclusion is inescapable that the two resorts use the same marketing channels to reach prospective customers. The implication is clear that increased use of advertising would result in increased use of the same marketing channels, and, by extension, lead to increased confusion.

f) *Type of Services and Degree of Care to be Exercised by the Consumer.* As indicated elsewhere, the plaintiff and defendants offer similar services of a type enjoyed by the sporting, fishing, or vacationing public. The consumer in choosing a fishing resort is likely to use a higher degree of care in finding a geographical location, but it is safe to assume that the consumer could conceivably be less careful in selecting a specific resort for the first time. Even a careful consumer could be mislead by the similar logos.

g) *Defendants' Intent in Choosing the Particular Logo.* The Rushes testified that they sought a distinctive logo, one that would be an asset to their business. Sam Smith, whose firm developed Gaston's logo, testified that his company in designing logos tried to "create something that's very distinctive" and "totally unlike anything else for anyone else" that might be in the same business. By contrast, Roger Faris, who developed the Sportsman's logo, testified that he thought the logo was too close to Gaston's. The court could conclude from the evidence that defendants intentionally simulated Gaston's logo. However, the court finds that proof of fraudulent intent is not required to sustain a charge of unfair competition where the necessary and probable tendency of defendants' conduct is to deceive the public. *Liberty Mutual Insurance Co.*, 185 F.Supp. at 903.

h) *Likelihood of Expansion.* The two businesses have presented to the court financial records which indicate increasingly heavier expenditures for advertisement of their services. The logical conclusion is that both businesses intend to continue and to expand their operations if economically feasible.

The foregoing analysis warrants the legal conclusion that likelihood of confusion will result if Sportsman's continues to use its present logo to advertise its services.

B. *Trademark Dilution.* Plaintiff also alleges that defendants' use of the offending logo dilutes the distinctiveness of its design mark. The possibility of confusion is one type of harm which may afflict the owner of a mark. Dilution constitutes a less immediately discernible injury to the trademark by impairing its effectiveness as a selling device. *Callman, supra,* § 21.11. The essence of the tort of dilution is not confusion, but the debilitation of a mark by another's use of a similar mark. The test is whether the effectiveness of the original mark will be diluted by continuous use of the similar mark. Counsel notes that Arkansas courts have not addressed the particular issues presented in the instant case, i.e. similar marks used by parties in direct competition with one another. Other state jurisdictions which have addressed the issue are divided as to the application of anti-dilution laws in such cases. The court, therefore, approaches the question of whether Sportsman's mark violates Arkansas dilution law as one of first impression. The statute provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter or a mark valid at common law, shall be grounds for injunctive relief notwithstanding the absence of competition be-

tween the parties or the absence of confusion as to the source of goods or services.

Ark.Code Ann. § 4–71–113 (1987).

The court finds that the clear meaning of the statute comprehends cases in which the parties directly compete. Such a meaning is logically inferred from the use of the word, notwithstanding. The statute applies obviously to competitors who directly compete and *also* to those who do not compete directly.

The court is further encouraged by Judge Henley's assertion that the Arkansas law of trademarks, trade names and unfair competition appears to be orthodox and in accord with *general* principles. *Liberty Mutual Insurance,* 185 F.Supp. at 903. Arkansas courts have held in clearly distinguishable cases that the court will allow greater similarity in marks when businesses do not deal with the general public, *Save–a–Stop, Inc. v. Sav–a–Stop, Inc.,* 230 Ark. 319, 322 S.W.2d 454, 121 U.S.P.Q. 232 (1959), and that descriptive marks that have not acquired a secondary meaning will not be protected. *Pullan v. Fulbright,* 287 Ark. 21, 695 S.W.2d 830 (1985). These cases merely indicate for our purposes that less similarity will be allowed when businesses deal with the general public, and that a distinctive mark such a Gaston's that has acquired secondary meaning will be protected.

### III. SUMMARY

Plaintiff has successfully carried the burden of showing that defendants' use of the infringing logo is likely to cause confusion. Defendants could have defeated plaintiff's cause by successfully attacking Gaston's mark. This they have failed to do. Defendants attempt to discredit Gaston's use of a trout contending that portion of the mark is generic. The trout alone may be generic and therefore unprotectable. The court, however, finds that the entire format of the logo is distinctive.

Defendants have also contested plaintiff's position by asserting the affirmative defenses of estoppel, waiver and laches. *Supra* at II. Defendants have not shown that the plaintiff's delay was inexcusably long under the circumstances or that they have suffered undue prejudice. *Am–Brit, Inc. v. Kraft,* 805 F.2d at 974. Plaintiff continued to use its mark and has pursued means to stop defendants' use of a similar one.

Both plaintiff and defendants presented financial records indicating that the businesses are prospering. The court cannot find detrimental reliance by the defendants. The court finds instead long use by plaintiff of a distinctive logo and defendants' invasive use of a similarly confusing logo. The nature of the defendants' increasing use of the offending mark represents conduct which courts have interpreted as "gradual" and "progressive" infringement which encourages delay and defeats the defense of laches. *A.E. Staley, Mfg. Co. v. Staley Milling Co.,* 253 F.2d 269, 116 U.S.P.Q. 546 (7th Cir.1958). The court, however, is persuaded that Gaston's conduct in and of itself does not constitute laches, but represents reasonable protest under the circumstances.

The plaintiff seeks injunctive relief against defendants' further use of the offending mark and written evidence of compliance therewith, surrender of all offending matter, an accounting for profits gained by the defendant and assessment of damages for loss suffered by the plaintiff.

The relief granted by the court should be sufficient to protect plaintiff's mark from infringement, plaintiff's business and good will, but should not be unduly oppressive or burdensome to the defendants. *Liberty Mutual Insurance Co.,* 185 F.Supp. at 909; *King Pharr Canning Operations v. Pharr Canning Enterprises,* 85 F.Supp. 150, 83 U.S.P.Q. 146 (W.D.Ark.1949).

Accordingly, the court orders that the defendants be enjoined from further infringing use of their confusingly similar logo, that defendants destroy all matter on which the logo is impressed; that defendants be enjoined from use of the specific configuration of the Sportsman's logo or of any similar logo, that defendants be enjoined specifically from the use of a confusingly similar design utilizing a fish encompassed by an oval in any future mark whether flanked by writing or not; that defendants provide evidence of compliance

herewith by filing with the court said written proof within thirty days after the date of the order.

The court finds further that equity requires, because of insufficient evidence, that damages and an accounting be denied. Costs to be borne by defendant.

This memorandum contains the findings of facts and conclusions of law required under Rule 52(a) which duty the parties conferred upon the court by virtue of the stipulations accompanying their joint motions for summary judgment.

A separate order in accordance herewith will be entered concurrently.

### ORDER

Now, on this 17th day of June, 1988, based on the record before us, the court finds, for the reasons set out more fully in a memorandum opinion of even date, that the plaintiff is entitled to relief and hereby orders:

1. That the defendants be permanently enjoined from using the confusingly similar Sportsman's logo which is the subject of this litigation.

2. That defendants be permanently enjoined from use of the specific configuration of the Sportsman's logo or of any similar logo.

3. That defendants be permanently enjoined from using a confusingly similar design utilizing a fish encompassed in an oval in any future mark whether flanked by writing or not.

4. That defendants destroy all matter on which the present offending logo is impressed and furnish evidence of such destruction to the court within thirty (30) days of the date of this order.

IT IS SO ORDERED.

APPENDIX I